HEWES v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania. December 6, 1927.

No. 7.

Internal revenue ⟨⟩7(11)—Profit from sale of real estate acquired before March 1, 1913, to be computed on its fair market value on that date (Revenue Act 1918, § 202[a], par. 1 [Comp. St. § 6336⅛bb]).

Under Revenue Act 1918, § 202(a), par. 1 (Comp. St. § 6336⅛bb), profit from sale of real estate acquired before March 1, 1913, is to be computed for income tax purposes on the fair market value of the property on that date, and this is not measured by its cost to the taxpayer, nor by the price for which he may have offered to sell it, nor is a deduction to be made because his title was then in litigation, whereby the subsequent judgment it was sustained.

At Law. Action by Charles P. Hewes against D. B. Heiner, Collector of Internal Revenue. Judgment for plaintiff.

Gunnison, Fish, Gifford & Chapin, of Erie, Pa., for plaintiff.

John D. Meyer, U. S. Atty., and W. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa., for defendant.

THOMSON, District Judge. The plaintiff in this suit seeks to recover from the defendant $4,733.41, with interest, being additional income taxes assessed against him for the calendar year 1918, which amount the plaintiff paid under protest; his claim for refund being filed and refused. The facts are stipulated, and from these arise the question of law.

The tax is estimated on an alleged profit realized by the plaintiff from the sale, in 1918, of a strip of land in the city' of Erie, having a front of 40 feet on East Twelfth street, and extending through the square to Thirteenth street. The square is in a central location of the city, lying between State and French streets, which rendered the land in question, though unimproved, quite valuable. For a considerable time prior to 1913, the strip of land had been used by adjoining owners, and to some extent, by the public also, as a passageway through the block from Twelfth to Thirteenth streets.

The city of Erie, in 1896, paved Twelfth street, from State to French streets; the Barber Asphalt Paving Company, or a subsidiary, the Erie Paving Company, being the contractor. The cost to this property was assessed against the property by description, and "unknown owner," in conformity with the Pennsylvania statute. On this lien, a writ of scire facias was issued, judgment was obtained, execution issued, and the land sold at judicial sale and purchased by F. V. Greene, who was president of the Barber Asphalt Paving Company, to which the city of Erie had assigned the lien. Greene took title individually, but in fact as trustee for his company, the owner of the judgment. Later, in December, 1896, Greene conveyed the land to Hewes, the plaintiff herein, by deed duly delivered, but not at that time recorded.

The conveyance was made in pursuance of an agreement, dated December 28, 1896, between Greene and the plaintiff, reciting that Greene had that day conveyed to the plaintiff the premises, "for an express consideration of $1, and the further consideration of a mortgage on said premises, of even date, securing the payment of $800 on or before the 1st day of July, 1903, with interest from July 1, 1900." It also provided that liability on the mortgage should be restricted to the land in question, and, should there be any failure of title to the premises described, Greene would cancel and satisfy the mortgage upon request of the plaintiff, or any one representing him. The mortgage was recorded.

Following this, the owners of adjoining property continued to use, for purposes of travel, the land in question, and claimed that, by reason of such user for upwards of 21 years, the land had become a public alley by prescription. For this alleged trespass on his land, about 1900, the plaintiff brought a suit against one of the adjoining owners for his trespass upon his land. At the close of the trial, the plaintiff took a voluntary nonsuit. After the termination of the trespass suit, some correspondence followed between Greene, the holder of the mortgage, and the plaintiff, in which the difficulties and uncertainties of litigation were dwelt upon, and in which the plaintiff offered to reconvey the land upon the satisfaction of the mortgage by Greene, unless the latter would bear some part of the expenses of litigation. This Greene declined to do, but subsequently satisfied the mortgage, and never requested a reconveyance of the land; the title under the deed delivered in 1896 constantly remained with the plaintiff, never thereafter being conveyed or reconveyed by him.

In July, 1912, the plaintiff brought an action of ejectment, naming all of the adjoining owners as defendants, together also with the city of Erie. This case was brought to trial in the common pleas court of Erie county in 1915, judgment being rendered thereon in favor of the plaintiff on June 1, 1915; the court holding that the defendants should have made any defense they might have to the scire facias issued upon the lien, and, having permitted the same to go to judgment and sale, they were precluded from subsequently attacking the same, and that the title acquired by the plaintiff from the sheriff's vendee was absolute as of the date of his deed, December 28, 1896. This judgment was affirmed by the Supreme Court of Pennsylvania in May of 1916. The plaintiff then brought an action in trespass to recover mesne profits against said defendants, and recovered the sum of $4,202.28 for the use of said land by them from July, 1912, to the date of his judgment in ejectment, which judgment was paid to him and included in his income tax return for the year 1918. Thereafter the defendants in said ejectment suit filed a bill in equity against the plaintiff, praying for an injunction restraining him from interfering with their alleged right of passage over said land. This bill was dismissed by the court below;¹ the decree being affirmed by the Supreme Court of the state in February, 1917.

In 1918, the plaintiff sold the property for $33,230. In his tax return he deducted $28,000 from this sale price as a fair market value of the property on March 1, 1913, and paid income tax on the balance. The Commissioner of Internal Revenue reduced this 1913 value to $6,500, being the amount which the plaintiff testified he had offered to accept from defendants in the ejectment suit during the pendency of the suit. On appeal of the plaintiff to the Board of Tax Appeals, the

latter, concluding that the basis adopted by the Commissioner was wrong, fixed the tax on the basis of what it concluded was the actual cost of the land to the plaintiff, viz. $500 paid to Greene as purchase money, and $5,250 expended by the plaintiff for attorney fees in the litigation which established the .title. The tax being paid under protest and refund being refused, this suit was brought by the plaintiff.

The stipulation shows the total cost of the land to the taxpayer was $3,750, $500 being the purchase price and $3,250 the attorney's fees. It is also stipulated that the fair market price or value of the property as land in the hands of an owner able to convey a complete title, with an exclusive right of possession to it, on March 1, 1913, was not less than $28,000.

The Revenue Act of 1918 (Comp. St. § 6336⅛bb) provides as follows:

"Sec. 202 (a). That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date. * * *"

The Commissioner of Internal Revenue and the Board of Tax Appeals set up different standards to measure the deduction to which plaintiff was entitled; one being based upon plaintiff's offer of compromise of the litigation, and the other upon the purchase money and expenses paid by him. Neither of these was in accord with the basis fixed by the act of Congress, viz. "the fair market price or *value* of the property," as of March 1, 1913. They did not undertake to determine the market value of the property, which is the only element recognized by the act, but sought to attach a value to the adverse claims of title or right of possession asserted by the adjoining owners, defendants in the ejectment suit. Both tribunals appear to have ignored the important fact that the Pennsylvania courts having jurisdiction of the premises, in 1916, conclusively adjudged that the adverse claims were unfounded and invalid, and that the plaintiff in fact was possessed of a complete title in fee simple, with exclusive right of possession as of the date of the delivery to him of his deed, more than 10 years prior to 1913. The actual value of the property could certainly not be depreciated, because third persons asserted a claim to an easement over it and the right to use the same. These pass for nothing, in view of the final adjudication of the Supreme Court. These invalid claims might have interfered with the sale of the property, but it did not affect its actual value.

In truth, the plaintiff owned the property and was entitled to exclusive possession of the same, before as well as after March 1, 1913. The value of that property so held and owned was the true basis of the tax, not the invalid claim of some third party in reference to the land. It would appear to be beyond the power of any one to establish the value for the adverse claims asserted by adjoining owners. As soon as the case could be reached for adjudication the courts determined that such claims had no value. It certainly could not be the law that one man may change the basis of his neighbor's tax by wrongfully asserting an unfounded claim against his property. As I understand the act of Congress, it fixes the value of the property as the basis of the tax. The Commissioner, however, undertook to base the tax upon what he considered the value of the plaintiff's title thereto, which necessarily involved a consideration of the value of adverse claims of title and right of possession, however unfounded they might be in fact. In the use of the words "fair market value" of the property in question, Congress set up a standard, the most practical which it had in mind, to determine the value of the property as between one who wished to purchase and one who wished to sell at a fair price, both having reasonable knowledge of the facts. This rule is given effect to ascertain the value. If the value is known, or is agreed upon, no application of the "fair market value" rule is necessary.

Here it is stipulated that the fair market price or value of the land on March 1, 1913, was not less than $28,000. This provision of the stipulation is qualified by the use of the words "in the hands of an owner able to convey a complete title, with an exclusive right of possession to it, on March 1, 1913." This limitation, of course, was inserted on the defendant's theory that the situation was changed because on that date, the title of the plaintiff, and the exclusive right of possession were pending and undetermined; that is, not finally adjudicated. In my judgment this qualification is immaterial.

As hereinbefore stated, the value of the property and the right of possession were in fact in the plaintiff, as the subsequent adjudications conclusively established. As suggested by the learned counsel for the plaintiff, if proceedings had been instituted to condemn this land on March 1, 1913, under the right of eminent domain, the value which would have been determined in such proceed-

ing would be the fair market value of the property, undiminished by any speculative or assumed value of any adverse claims to the title. The condemnor would have been obliged to pay the full intrinsic market value of the property itself. If paid into court, it would have accrued to the benefit of the true owner, who would have received it as soon as the litigation ended.

The action of trespass against the defendants named in the injunction suit, wherein mesne profits were recovered, for the trespass upon his right of possession to the land in question, from July, 1912, to 1915, the date of the judgment in ejectment, was a conclusive adjudication of his right to exclusive possession of the land on March 1, 1913. On the amount so recovered he made return, paying taxes thereon to the government. We think the position of the plaintiff under the foregoing facts, that he should be given the benefit of the fair value of the property itself, on March 1, 1913, when he had in fact both title and right of possession, is sound.

Nor do I think the government's position, that the plaintiff, on March 13, 1913, held the title to the property as a constructive trustee for the Barber Asphalt Paving Company, can be maintained. There is nothing in the agreement or correspondence to create such a trust. On its face the conveyance was absolute. The property was never reconveyed, nor was any reconveyance requested by Greene when the mortgage was satisfied. The paving company apparently chose to satisfy the mortgage, without any reconveyance of the land, trusting Mr. Hewes for the purchase money. Afterwards, taking no chance of paying legal expenses, the company reduced the purchase money to $500, which amount the plaintiff paid. The company thereupon gave its receipt "in full settlement and payment of purchase money due from the said Charles P. Hewes on conveyance of property to him by Francis V. Greene, Esq., a former president of this company, by quitclaim deed, dated December 28, 1896." This distinct recognition of an absolute conveyance is inimical to the idea of the existence of a trust. The paving company having at no time since asserted any trust, how can the government be held to assert such trust in the paving company's favor, in order that it may increase the taxes of the plaintiff.

Even if an implied trust could be asserted, because plaintiff held the title after the satisfaction of the mortgage, the trust would be barred by the Pennsylvania act of 1856 (Pa. St. 1920, § 13891), within five years after the trust accrued. This act has been strictly construed by the courts of Pennsylvania.

Let judgment be entered for the plaintiff and against the defendant in the sum of $4,733.41, with interest from July 24, 1926.