## HEINER, Collector of Internal Revenue, v. HEWES.

Circuit Court of Appeals, Third Circuit.
February 14, 1929.

No. 3823.

John D. Meyer, U. S. Atty., W. J. Aiken, Asst. U. S. Atty., and John A. McCann, all of Pittsburgh, Pa., and C. M. Charest and William E. Davis, both of Washington, D. C., for appellant.

Gunnison, Fish, Gifford & Chapin and Orsin J. Graham, all of Erie, Pa., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and McVICAR, District Judge.

WOOLLEY, Circuit Judge. The Commissioner of Internal Revenue assessed additional income taxes for the year 1918 against Charles P. Hewes based upon a taxable gain in the sale of a single tract of land. On appeal the Board of Tax Appeals redetermined the tax. After paying the tax under protest, followed by denial of a claim for refund, Hewes brought this suit to recover the amount paid, with interest. The case was tried to the court without a jury on a stipulation of facts framed and submitted in the nature of a case stated. The plaintiff had a judgment and the defendant appealed. The sole question involved, as stated by the appellant, is: What was the amount of taxable gain derived from the sale in 1918 of the land in question? There being admittedly a taxable gain, we think the true question involved is: By what rule should the taxable gain in such case be determined?

Given in barest outline, the facts are these: A narrow strip of land extended from street to street midway a block in a busy section of the City of Erie, Pennsylvania. It was used by owners of adjoining lands and by the public as well. In 1896 the city assessed against the property a tax for its share of the cost of paving one of the abutting streets for which, later, the property was sold. It was purchased by F. B. Greene, president of the paving company, individually but in trust for the company. In the same year Greene sold and by deed conveyed the property to Hewes, the plaintiff, for $1.00 and his mortgage for $800 secured by and restricted to the land in question, the mortgage to be "canceled" should the title fail. In 1900 Hewes sued the owners of the adjoining properties for trespass but took a voluntary nonsuit. Later, he endeavored to enlist Greene in another title litigation which he had instituted, but failing in that, Greene,

after negotiations ending in 1915, satisfied the $800 mortgage and accepted from the plaintiff $500 "in full settlement and payment of the purchase money due from the said Charles P. Hewes on conveyance of the property" in 1896.

In 1912 Hewes brought an action of ejectment in a Pennsylvania state court against the owners of the adjoining lands. While that suit was pending he offered the land to the defendants for $6,500. The offer being refused, he proceeded until, in 1915, he obtained a judgment which was affirmed by the Supreme Court of Pennsylvania. Hewes v. Miller, 254 Pa. 57, 98 A. 776; Stearns Co. v. Hewes, 256 Pa. 577, 100 A. 1054. After an action of trespass against the abutting owners and recovery of mesne profits, the plaintiff in 1918 sold the property for $33,-230, which, together with the mesne profits recovered, he included in his tax return for that year but from which he deducted $28,-000 as the value of the property at the critical period in 1913. Apropos that figure it is stipulated in this suit that the fair market price or value of the tract "in the hands of an owner able to convey a complete title with exclusive right of possession to it on March 1, 1913, was not less than $28,000."

On this state of facts three rules have been applied to determine the taxable gain arising from the sale based on correspondingly varying values on March 1, 1913:

The Commissioner determined the value of the property as of that date at $6,500 on the principle that that amount, being the sum for which the plaintiff, *after* 1913, offered to sell the land to the defendants in the ejectment suit, was the fair market price or value; the Board of Tax Appeals redetermined the value at $5,750 on the theory that $500, the amount the plaintiff finally paid for the property in 1915, plus $5,250 expended *between* 1912 and 1915 in the ejectment litigation which established the title, was the fair market price or value of the property in 1913; and the learned district court adjudged the value at $28,000, the amount stipulated as the fair market price or value on March 1, 1913, in the hands of an owner able to convey a complete title with exclusive right of possession conformably with its understanding of the rule prescribed by the statute.

The applicable provision of the Revenue Act of 1918 is section 202a (40 Stat. 1060), which provides:

"That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—

"(1) In the case of property acquired *before* March 1, 1913, the fair market price or value of such property as of that date; and

"(2) In the case of property acquired on or *after* that date, the cost thereof. * * * "

█ The defendant urges that in view of the transactions between Greene and Hewes beginning in 1896 with the delivery of a deed of conveyance with a nominal consideration and the giving of a mortgage for $800 and concluding in 1915 with satisfaction of the mortgage, payment of $500 and recording the deed, there was between Greene (and perhaps the paving company) on one part and Hewes on the other a constructive trust which did not ripen into a title in Hewes until, after March 1, 1913, the fluctuating consideration was finally paid, and that in consequence Hewes acquired the property *after* that date, and that under section 202a (2) the property should be valued at cost. This is still another rule sought to be applied in determining the value of the property in question. We are, on the facts, constrained to hold against this contention and stand with the learned trial judge on his finding that the doings of the parties, especially Greene's delivery in 1896 and subsequent recognition of an absolute conveyance, were inimical to the existence of a trust. The question of taxable gain therefore is ruled by section 202a (1) of the Revenue Act of 1918 prescribing, in the case of property acquired *before* March 1, 1913, its fair market price or value on that date as the basis of the tax.

█ Applying this, the only valid rule, to the case, what does the stipulated record show as to the "fair market *price*" or the "fair market *value*" of the plaintiff's property on March 1, 1913? As it discloses no sale of the property and no sales of nearby properties in that year it supplies no evidence of a market price. Concededly it had a market value, stipulated to be $28,000 if the owner's title were good and his right to possession exclusive. This qualification of the stipulation cannot alter the true value of the property unless, as the defendant urges, we should take into account the adverse claims of title. By this we are asked, in effect, to appraise the adverse claims of title and reckon the value of the property by deducting the value of the claims. We think such a rule is not sound because not sanctioned by the statute and not practicable because impossible of application. Any claim made adversely to the title of property has a quality or value, even a nuisance value, that may affect its ready sale but it does not change

its actual value. If it be thought there is a difference between actual value and market value it is certain that the statute does not authorize the determination of fair market value, the basis of taxable gain, by deducting from actual value any amount which someone might think is the destructive value of a claim made adverse to the title. Moreover it is the value of property, not the value of adverse claims of title or the value of property affected by adverse claims, that the statute makes the basis of the taxpayer's liability for taxation. If it were otherwise any assertion of an unfounded claim of title would become if not the basis certainly a factor of taxation and the rule of the statute would be displaced by the acts and whims of strangers, thereby actually and, we think, unlawfully depreciating the true taxable value of property and depriving the taxpayer of a lawful advantage.

As the courts of Pennsylvania have in this instance decided that the plaintiff, ever since the delivery of the deed in 1896, had a good title with right to exclusive possession to the property in question, we are constrained to hold that its fair market value on March 1, 1913, was that which was stipulated.

The judgment is affirmed.