### SAFETY CAR HEATING & LIGHTING CO. v. UNITED STATES (two cases).
### Nos. 2526, 2527.

District Court, D. New Jersey.
Dec. 1, 1933.

Wall, Haight, Carey & Hartpence and Thomas G. Haight, all of Jersey City, N. J., and Henry T. Stetson, of Orange, N. J., for petitioner and plaintiff.

Phillip Forman, U. S. Atty., of Trenton, N. J., Oliver Randolph, Asst. U. S. Atty., of Newark, N. J., and R. P. Hertzog, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C.

FAKE, District Judge.

The major facts and the issues arising on them are so concisely stated in defendant's brief that the language cannot be improved upon, so I quote:

"The Safety Car Heating and Lighting Company was organized in 1887 and was engaged in the manufacture and sale of electric lighting equipment for railway cars. In 1907 it secured by assignment from John R. Creveling United States Letters Patent No. 747686, which had been issued to said assignor by the United States Commissioner of Patents in 1903. Said patent covered a train lighting system for use on railway cars.

"In January, 1912, plaintiff instituted a suit for damages in the United States District Court for the Western District of New York for the alleged infringement of said patent against the United States Light and Heating Company. The suit was contested and no action was taken thereon prior to March 1, 1913. An interlocutory decree was entered for plaintiff Dec. 11, 1914 ([D. C.] 222 F. 310) and affirmed in June, 1915 ([C. C. A.] 223 F. 1023). Thereafter, proceedings were held before a Special Master to determine the amount of the recovery to which the Safety Car Heating and Lighting Company was entitled. A report thereon was rendered in 1923 allowing damages for $501,180.32, and judgment was entered in that amount October 5, 1924. Said amount represented the recovery allowed by the Special Master for the entire period of infringement from January 1, 1909 to April 30, 1914. The amount of said sum applicable to the period prior to March 1, 1913, was $436,137.41.

"In May, 1925, plaintiff accepted in settlement of said judgment the sum of $200,000. The expenses of litigation after the filing of the supplemental bill were $23,468.05 (R. 119), leaving a net amount received by plaintiff of $176,531.95, of which $153,621.72 is attributable to infringement of the patent during the period prior to March 1, 1913.

"In filing its return for the calendar year 1925, the Safety Car Heating and Lighting Company did not include any portion of the amount received in settlement of the patent litigation in its taxable net income but reported the sum of $176,531.95 as nontaxable income. Thereafter, upon audit of said return, the Commissioner of Internal Revenue determined, assessed and collected an additional tax of $22,162.07, as shown by letter dated December 18, 1929, based upon the addition to taxable income of the said sum of $176,531.95. Claim for refund was thereafter filed for $19,970.28 of the said additional tax, and a claim was also filed for $69,729.18, representing a portion of the tax paid on the return. Said claims were subsequently rejected by the Commissioner prior to institution of these suits."

Questions involved:

"The question of law involved in the suit against the Collector is whether the net amount received in settlement of a contested suit for patent infringement, which was instituted prior to March 1, 1913, is taxable income when received in 1925, while the question of law involved in the suit against the United States is whether a loss was sustained upon said settlement based on the difference between the amount received and the March 1, 1913 value of the claim for the patent infringement."

Taking up the issues in the order of their statement, we are first called upon to answer the question as to whether or not the net amount received by plaintiff in settlement of a patent suit instituted prior to March 1, 1913, and settled in 1925 is taxable income in the latter year. The net amount attributable to infringement prior to March 1, 1913, is as stated $153,621.72, and the entire amount to the day of settlement in 1925 was $176,531.95. The sum is thus apportioned because the amount allocated to the period prior to March 1, 1913, is dealt with by the plaintiff as a nontaxable asset, while defendant contends it is income for the year 1925 and taxable as such.

The values with which we are concerned had their source in a claim or chose in action, and on March 1, 1913, that chose in action had not been valued or fixed in terms of money. That it existed cannot be denied, and that it had value cannot be ignored. Nor can it be said to be a thing the value of which could not be ascertained with legal certainty as of March 1, 1913. Actually, its value was so ascertained and fixed by a special master who arrived at his conclusions in terms of money by the use of admissible facts and mathematical calculations. Article 90 of Regulations 65 expressly provides that unconditional claims arising prior to March 1, 1913, whether presently payable or not, are not taxable as income accruing subsequent to that date. The prosecution of the infringement suit was necessary in this case only because the infringer refused to recognize the law and the facts, which at all times were there to be construed in plaintiff's favor. To hold that the unjust necessity for this suit constituted a condition precedent to the vest-

278

ing of rights or title in plaintiff as to the damages inherent in the chose in action, would be to assume that the title did not vest because an unsound and illogical attack upon it was made, and this is, of course, absurd. When infringement was found by the decree of the District Court of the Western District of New York, its effect related back to the date of the patent and also to March 1, 1913. The reasoning upon which the conclusion here is arrived at need not be further enlarged upon, since it follows the clear logic of Hewes v. Heiner, Collector (D. C.) 24 F.(2d) 748, affirmed (C. C. A.) 30 F.(2d) 787. In that case, the March 1, 1913, taxable value of land, the legal title to which was then in litigation, was considered. Both the District Court and the Circuit Court of Appeals held in effect that the existence of litigation as to the title had no bearing upon the value of the land for tax valuation purposes. And so here, while the ascertainment of the value of plaintiff's choses in action was dependent upon the outcome of litigation, such litigation merely fixes the value of the pre-existing rights or title.

The plaintiff settled its right to $501,180.-32 for the sum of $200,000. This netted, after deducting expenses, $176,531.95, of which latter amount $153,621.72 was attributable to infringements prior to March 1, 1913. On this sum plaintiff paid a tax of $19,970.82. This tax was erroneously levied and collected, and should be returned with interest thereon from the day of payment.

■ Secondly, we are called upon to answer the question as to whether or not any deductible loss was suffered by plaintiff in the settlement whereby it received in 1925 less than it was entitled to.

It will be conceded that the claim or chose in action is to be valued as of March 1, 1913, and in this connection our work has been largely done for us by the special master who reported in the infringement suit. It is found, as stated by defendant, that the master fixed plaintiff's damages applicable to the period prior to March 1, 1913, at $436,137.41. Again looking to Hewes v. Heiner, Collector, supra, for our guide, we find that the court there fixed the value of the land at the figure which had been fixed by the courts of Pennsylvania, and, by the same reasoning here, we fix the value of the chose in action or claim at the amount fixed by the special master, to wit, $436,137.41.

The facts clearly show that the defendant in the infringement suit was insolvent in 1925. Its assets had passed to another cor-

poration, and there were divers other complications which made it advisable for the plaintiff to settle with its adversary as it did. $200,000 was not an unfair settlement of its $501,180.32 claim under all the circumstances, and certainly the difference is not in the nature of a gift. It follows that in 1925, when the settlement was consummated, the plaintiff lost the difference between $436,-137.41, the March 1, 1913, value of its chose in action and the prorated portion of $200,-000 ($174,040.62). This shows a loss of $262,096.79.

Judgments will be entered in these cases in conformity with the foregoing conclusions.