## UNITED STATES v. SAFETY CAR HEATING & LIGHTING CO.*

No. 75.  Argued December 20, 1935.—Decided January 6, 1936.

---

*Together with No. 76, Rogers, Collector of Internal Revenue, v. Safety Car Heating & Lighting Co. Certiorari to the Circuit Court of Appeals for the Third Circuit.

*Mr. J. P. Jackson,* with whom *Solicitor General Reed, Assistant Attorney General Wideman* and *Mr. James W. Morris* were on the brief, for petitioners.

*Mr. Thomas G. Haight,* with whom *Messrs. Robert H. Montgomery, Henry T. Stetson,* and *James O. Wynn* were on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The respondent claims a refund of income taxes under the Revenue Act of 1926. The petitioner in one of the cases (No. 75) is the United States, a defendant in the court below. The petitioner in the other (No. 76) is the Collector of Internal Revenue for the Fifth District of New Jersey.

Since 1907, the taxpayer, respondent, has been the owner of the Creveling patent for an improvement in the electric lighting equipment of railway passenger cars. It brought suit in 1912 against the United States Light & Heating Company to restrain an infringement of the patent, and for an accounting of damages and profits. The suit was pending on February 25, 1913, the effective date of the Sixteenth Amendment, and on March 1, 1913, the effective date of the first statute enacted thereunder. Act of October 3, 1913, c. 16, 38 Stat. 114, 166, 168, 172, 174.* The accused infringer contested its liability for in-

---

* With reference to every corporation subject thereto, that act provides as follows: " The tax herein imposed shall be computed upon its entire net income accrued within each preceding calendar year ending December thirty-first: *Provided, however,* That for the year ending December thirty-first, nineteen hundred and thirteen, said tax shall be imposed upon its entire net income accrued within that portion of said year from March first to December thirty-first, both dates inclusive, to be ascertained by taking five-sixths of its entire net income for said calendar year: . . . " 38 Stat. 174.

fringement as well as its liability for damages and profits. Not till 1915 was the capital fact of an infringement determined. On February 15, 1915, there was entered in the District Court an interlocutory decree for an injunction, which was affirmed by the Circuit Court of Appeals in July of the same year. An accounting followed before a Master and continued for eight years. On that accounting the complainant waived any recovery for damages, and confined its claim to the profits received by the infringer. On May 26, 1923, the Master filed his report in which he found that there was due to the complainant for profits received by the infringer between January 1, 1909 and April 30, 1914, the sum of $501,180.32. Of this award, a large part ($436,137.41) was for profits applicable to the period before March 1, 1913. The report was confirmed by the District Court on October 10, 1923, at which time the infringing defendant was in the hands of receivers. A final decree followed in October, 1924, the award being adjudged to constitute a superior lien upon the assets of the infringer then held by a successor. Cross-appeals were carried to the Court of Appeals for the Second Circuit, the complainant contending that the award was too small, the infringer and its successor contending that the award was too large and that error had been committed also in the declaration of the lien. While the appeals were undetermined, the complainant accepted a settlement in May, 1925, after thirteen years of litigation, whereby it received from the infringer the sum of $200,-000 in satisfaction of the judgment. After deducting the expenses incurred in connection with the suit ($23,-468.05), the net amount collected was $176,531.95, of which part ($153,621.72) is attributable to acts of infringement before March 1, 1913, and part to such acts thereafter.

In May, 1926, the taxpayer filed its income tax return for 1925, showing a net income for that year of $1,473,-

187.13, and a tax due thereon of $172,610.19, which has been paid. It did not include in the return any part of the proceeds of the patent litigation ($176,531.95), nor did it claim any deduction for loss resulting from the settlement. Thereupon the Commissioner made a deficiency determination of $22,162.07, plus interest, the additional tax due after adding the net proceeds of the settlement to the income of the year. Two claims for refund followed. The first, filed in March, 1929, was for $69,729.18. The taxpayer took the ground that as a result of the settlement it had sustained a loss of $536,378.28, which through error it had failed to deduct in making its return and in paying the tax thereunder. Its books were kept on the accrual basis. The second of the two claims, filed in July, 1930, was for an additional refund in the amount of $19,970.82. In this the taxpayer took the ground that in determining the gross income for 1925 the Commissioner had erred by including that part of the proceeds of the settlement attributable to acts of infringement before March, 1913. Both claims were rejected by the Commissioner. The taxpayer then sued, making the United States the defendant with reference to the first claim and the Collector the defendant with reference to the second.

In the suit against the United States the District Court found that the taxpayer's claim for damages on account of so much of the infringement as had occurred before March 1, 1913, had a "market value" on that date of $436,137.41, the profits of the infringer up to that time as reported by the Master. From this the court concluded that in the year 1925 there had been a deductible loss of the difference between $436,137.41 and the sum of $174,040.62, a like proportion of the $200,000 actually recovered. The tax upon this difference ($262,096.79) was $34,072.58. The taxpayer received an award of judgment for that amount with interest. 5 F. Supp. 276. In the suit against the Collector, the District Court held that

such portion of the net settlement as was allocable to acts of infringement before March 1, 1913 ($153,621.72), had accrued to the taxpayer in advance of that date, and was therefore to be treated as capital, not taxable as income for the year when the settlement was made. The taxpayer received an award of judgment for the tax on that amount (i. e., for $24,732.90) with interest.

The Circuit Court of Appeals for the Third Circuit affirmed the judgments in both suits. 76 F. (2d) 133. To fix more precisely the taxable quality of contested and contingent choses in action belonging to a taxpayer before March 1, 1913, writs of certiorari issued from this court.

*First.* Congress intended, with exceptions not now important, to lay a tax upon the proceeds of claims or choses in action for the recovery of profits, unless the right to such recovery existed unconditionally on March 1, 1913, the effective date of the first statute under the Sixteenth Amendment.

The tax imposed on the respondent was laid under the Revenue Act of 1926 (c. 27, 44 Stat. 9), which includes in gross income (§ 213 (a)) gains on profits " from any source whatever." We have said of that Act that it reveals in its provisions an intention on the part of Congress to reach " pretty much every sort of income subject to the federal power." *Helvering* v. *Stockholms Enskilda Bank,* 293 U. S. 84, 89. There is no denial that profits owing to a patentee by the infringer of a patent are income within the meaning of the statute, unless withdrawn from that category by the date of the infringement. Cf. T. R. 45, Art. 52; T. R. 62, Art. 51; T. R. 65, Art. 50; T. R. 69, Art. 50; *Commissioner* v. *S. A. Woods Machine Co.,* 57 F. (2d) 635.

Until July, 1915, the existence of any liability was contested and uncertain. The amount remained contested and uncertain until May, 1925, when there was a

settlement of the liability reported by the Master. Then for the first time the profits flowing from the infringement became taxable as income. *North American Oil Consolidated* v. *Burnet,* 286 U. S. 417, 423; *Lucas* v. *American Code Co.,* 280 U. S. 445, 451, 452; *Lucas* v. *North Texas Lumber Co.,* 281 U. S. 11; *Burnet* v. *Huff,* 288 U. S. 156. The respondent admits this to be true to the extent that the acts of infringement were later than February, 1913. The argument seems to be, however, that accrual has a different meaning when applied to income generated by acts committed earlier. But plainly the respondent's exemption, if it exists, will have to rest upon some other basis. A claim for profits so contingent and indefinite as to lack the quality of accrued income in March, 1913, cannot have had the quality of such income before that time, its existence and extent being then equally uncertain. Only an arbitrary dichotomy could bring us to the conclusion that part of the recovery was income to the taxpayer as of the date of payment or collection and part as of the date of the underlying wrong. The respondent, to prevail,. must be able to make out that though the profits were income in their entirety as of May, 1925, there was an intention of the Congress that part of this income, the part attributable to acts before March, 1913, should be excluded from the reckoning.

We find no disclosure of that intention in the provisions of the statute, and none in the history of other acts before it. The first statute following the Sixteenth Amendment laid a tax, as we have seen, on the entire net income " accrued " within each calendar year, the impost being coupled with a proviso that for the year 1913 what was to be taxed should be the entire net income " accrued " within that portion of the year from March 1 to the end. Definiteness of meaning was given to that and later acts by Treasury Regulations. Article 90 of Regulations 62,

adopted in 1922, provides: "Any claim existing unconditionally on March 1, 1913, whether presently payable or not, and held by a taxpayer prior to March 1, 1913, whether evidenced by writing or not" does "not constitute taxable income, although actually recovered or received subsequent to such date." This provision appears without change of form in all Treasury Regulations adopted since that time. T. R. 65, Art. 90; T. R. 69, Art. 90; T. R. 74, Art. 91; T. R. 77, Art. 90. It appears with unimportant verbal differences in earlier regulations. T. R. 45, Art. 87, as amended by T. D. 3206, 5 Cum. Bul. 116. A claim existing "unconditionally" would include a claim for interest on a bond or for rent under a lease. A claim existing conditionally can have no better illustration than is found in a claim to recover an infringer's profits. Cf. O. D. 917, 4 Cum. Bul. 142; O. D. 1141, 5 Cum. Bul. 134; S. M. 2285, III–2 Cum. Bul. 87, 89, 90, disapproving I. T. 1294, I–1 Cum. Bul. 111. Nor does the case for the Government stand upon the regulations alone without confirmatory evidence. By clear implication the regulations have been ratified by Congress, which has passed Revenue Acts at frequent intervals thereafter without a sign of disapproval. "Congress must be taken to have been familiar with the existing administrative interpretation." *McFeely* v. *Commissioner,* 296 U. S. 102; *Zellerbach Paper Co.* v. *Helvering,* 293 U. S. 172, 179, 180. Claims existing unconditionally before March 1, 1913, being thus excluded from the tax, the plain meaning of the regulation is that conditional or contingent claims, though they may have had an inchoate existence before March 1, 1913, are to be taxed when they are shorn of their conditional or contingent quality and become unconditional or absolute. So far as the problem to be solved depends upon the intention of the Congress in the enactment of the statute, the result is hardly doubtful.

Whatever obscurity exists has its origin, one may believe, in a not uncommon confusion of the rule with the exception. There is a tendency now and again to look upon March 1, 1913 as fixing a point of time when claims of every kind, no matter how contingent, became transmuted into capital, at least for taxing purposes. This is far from the truth, as the acceptance by Congress of the foregoing regulations sufficiently attests. The intention has rather been that, with exceptions specially declared or dependent upon considerations of established methods of accounting, every form of income accruing fully or unconditionally after February, 1913, shall contribute to the Treasury, though it had a potential existence for years before its capacity to fructify. As already suggested, perception of this intention has been clouded by exceptions, actual or seeming, which have been so insulated and emphasized as to be taken for the rule itself. Thus, Congress has now provided (see, e. g., Revenue Act of 1916, c. 463, § 2 (a), 39 Stat. 756, 757; Revenue Act of 1921, c. 135, § 201, 42 Stat. 224, 228; Revenue Act of 1926, c. 27, § 201, 44 Stat. 9, 10) that dividends may be distributed exempt from the tax to the extent that they are made out of earnings or profits accumulated before March 1, 1913. The exemption is " a concession to the equity of stockholders " (*Lynch* v. *Hornby*, 247 U. S. 339, 346; *Helvering* v. *Canfield*, 291 U. S. 163, 167), and had no existence under the pioneer statute, the Act of 1913, a dividend, irrespective of its source, being then taxable altogether. *Lynch* v. *Hornby, supra.* So Congress has now provided (see e. g., Revenue Act of 1924, c. 232, 43 Stat. 253, 259, § 204 (11) (b); *supra,* § 204 (b); Revenue Act of 1926, *supra,* § 204 (b)) that in computing gain or loss from the sale or other disposition of property acquired before March 1, 1913, the base shall be the cost or the value on that day, whichever is the greater. See also, Revenue Act of 1916, *supra,* § 2 (c); Revenue Act of 1921, *supra,*

§ 202 (b) (1). Cf. *Merchants' L. & T. Co.* v. *Smietanka,* 255 U. S. 509; *Goodrich* v. *Edwards,* 255 U. S. 527. We are not unmindful of cases in which a like formula was applied without the aid of statute. *Lynch* v. *Turrish,* 247 U. S. 221; *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179; *Hays* v. *Gauley Mountain Coal Co.,* 247 U. S. 189; and cf. *MacLaughlin* v. *Alliance Insurance Co.,* 286 U. S. 244, 251. They do not rule the case at hand. In those cases and others like them assets that were capital in February, 1913, had been converted into cash thereafter. Coal lands and timber lands and timber had been sold by an owner in the ordinary course of business. By the practice of merchants a stock in trade is capital according to its inventory value. *Hays* v. *Gauley Mt. Coal Co., supra,* at p. 193. Nothing of the kind is here. The case is not helped by speaking of the claim as " property." The question is whether it is property that has been transmuted into capital. In February, 1913, the chose in action now assessed was not a part of the respondent's capital as merchants or other business men would understand the term. Cf. *North American Oil Consolidated* v. *Burnet, supra.* At best it was contingent income, the income of the future. It had no inventory value, much less a value quoted in the market. Whether it would ever be worth anything was still unknown and unknowable. The answer was not given for many years thereafter.

The argument is pressed upon us that the claim collected by the respondent is to be viewed as one for damages rather than as one for profits, and that in the aspect of a claim for damages it had a " market value " ascertainable at the commencement of the suit and later. There are two reasons, if not more, why the argument must fail. In the first place, the respondent made an election to abandon any claim for damages and to confine itself to the profits received by the infringer. The amount of these profits was unknown at the commencement of the

suit and must needs have remained unknown in advance
of an accounting. To determine what the respondent got
we are to consider what it did, and not what it could have
had if it had made another choice. In the second place,
a claim for damages like one for an infringer's profits is
too contingent and uncertain to have a determinable mar-
ket value when the validity of the patent is unsettled and
contested and the factors making up the damage are
arrived at by conjecture. *Sinclair Refining Co.* v. *Jenkins
Petroleum Co.,* 289 U. S. 689, 697. Cf. *Heiner* v. *Crosby,*
24 F. (2d) 191; *Walter* v. *Duffy,* 287 Fed. 41. There is
significance in the fact that the estimate of the damage
in the claim filed with the Commissioner exceeded by
nearly $300,000 the estimate of the damage accepted at
the trial.

The case comes down to this: On February 28, 1913,
the respondent had a contested claim for profits which if
prosecuted effectively would ripen into income. That
claim would not have been capital if it had been acquired
for the first time on March 1, 1913. It was not turned
into capital because it had been acquired earlier. *Edwards*
v. *Keith,* 224 Fed. 585; 231 Fed. 110; *Workman* v. *Com-
missioner,* 41 F. (2d) 139. Before March 1, 1913, and
afterwards, it was continuously the same thing until re-
duced to judgment and collected. The case is not to be
confused with one where the basis of the suit is an injury
to capital, with the result that the recovery is never in-
come, no matter when collected. Examples of such a
claim are *Saunders* v. *Commissioner,* 29 F. (2d) 834, and
*Heiner* v. *Hewes,* 30 F. (2d) 787, cited by the taxpayer.
*Buffalo Union Furnace Co.* v. *Helvering,* 72 F. (2d) 399,
is perhaps upon the border line, the claim being not for
profits, but for recovery of out of pocket expenses. Con-
fining it to its peculiar facts, we do not read it as incon-
sistent with the views herein expressed.

*Second.* Congress was not restrained by express or im-
plied restrictions of the Federal Constitution from giving

effect to its intention and levying a tax upon the proceeds of the settlement.

In February, 1913, if our analysis of the facts is accurate, there was a contested and contingent claim for profits, not fairly to be characterized as income for that year or earlier. In 1925, this inchoate and disputed claim became consummate and established. It was now something more than a claim. It was income fully accrued, and taxable as such. Till then the patentee had its capital, the patent, and an expectancy of income, or income, more accurately, in the process of becoming. Thereafter it had something different. No doubt the income thus accrued derived sustenance and value from the soil of past events. We do not identify the seed with the fruit that it will yield.

Income within the meaning of the Sixteenth Amendment is the fruit that is born of capital, not the potency of fruition. With few exceptions, if any, it is income as the word is known in the common speech of men. *Lynch* v. *Hornby, supra,* p. 344. When it is that, it may be taxed, though it was in the making long before. *Mac-Laughlin* v. *Alliance Ins. Co., supra,* at pp. 249, 250; *Taft* v. *Bowers,* 278 U. S. 470; *Helvering* v. *Canfield, supra.* Cf. *Lucas* v. *Alexander,* 279 U. S. 573, 577, 578; *Towne* v. *Eisner,* 245 U. S. 418; *Eisner* v. *Macomber,* 252 U. S. 189, 206, 207. If exceptions are to be allowed in exceptional conditions, they are inapplicable here.

*Third.* The taxpayer is not entitled to a deduction on the basis of a difference between the value of the chose in action on March 1, 1913, or at any other time and the proceeds of collection.

(a) At the time of the settlement, the amount of the infringer's liability was contested as it had been before, the outcome of the contest being uncertain as long as the appeal was pending. The respondent chose to forego a large portion of the judgment in the belief that com-

promise was prudent. For all that appears, if compromise had been rejected, the judgment would have been so reduced as to make the recovery even less. True the respondent insists that the fear of a reduction was not the motive for the settlement. The motive is said to have been the fear that the judgment, even if not reduced, might not be susceptible of collection. On the other hand, the infringer may have viewed the prospects differently. We have no means of ascertaining whose forecast was the better. What we know is that there was a compromise through which patentee and infringer surrendered rights and opportunities.

(b) The value of the chose in action, uncertain at the time of settlement, was even more uncertain in February, 1913. Unpredictable vicissitudes might reduce it to a nullity. The patent might be adjudged invalid. The infringer might become insolvent. In the earlier years as in the later ones the supposed profits of the business might have evaporated as the result of neglect or incapacity. Not till the report by the Master and its confirmation by the court could the recovery be estimated with even approximate correctness. There is no contention by the respondent that the value of the judgment was greater at that time than it was a few months later at the date of the settlement in the face of an appeal.

The conclusion is inescapable that the acceptance of the settlement did not involve a loss of income, still less a loss of capital.

*Fourth.* The taxpayer is not entitled to a refund of the proportion of the settlement attributable to the profits of the infringer before the effective date of the Sixteenth Amendment.

This conclusion follows without need for elaboration from what has been said in this opinion as to the distinction between capital and income.

The judgments are

*Reversed.*

MR. JUSTICE SUTHERLAND, MR. JUSTICE BUTLER, and MR. JUSTICE ROBERTS are of opinion that the judgments should be affirmed. The claim of respondent was a valid one, constituting property prior to March 1, 1913. It not only had an ascertainable value at that time, but a value which was actually ascertained and found as a fact by the trial judge and affirmed by the court below. Since there is evidence in the record to support these concurrent findings, we are not at liberty to set them aside. The case clearly falls within the principle of *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179; *Lucas* v. *Alexander*, 279 U. S. 573, and other cases which might be cited. Certainly promissory notes, bonds, shares of stock and valid claims arising upon contract or in tort may be capital as distinguished from income, quite as much as a stock of goods or other tangible property. And quite as certainly, it is not necessary that these intangibles should have a *market* value or an *inventory* value. It is enough that they have an ascertainable value at the statutory time fixed.