E. R. SQUIBB & SONS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84283. Promulgated June 30, 1937.

*M. T. Moore, Esq., Joseph C. White, Esq.*, and *Thomas F. Boyle, Esq.*, for the petitioner.

*Rudy P. Hertzog, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in income tax for 1932 in the amount of $10,985.71. The petitioner alleges that the respondent erred in the determination of the deficiency—(1) in including in taxable income $75,763.50 as profit on the sale of its capital stock during the taxable year, and (2) in failing to allow as an additional deduction from gross income the amount of $4,063.10 accrued as additional liability for New York franchise tax for the year beginning November 1, 1932.

The respondent concedes that the petitioner is entitled to the deduction from gross income of $4,063.10 additional liability for New York franchise tax.

The facts bearing upon the profit realized by the petitioner from the sale of its own shares of stock have all been stipulated.

In 1929 the Squibb Plan, Inc. (Delaware corporation hereinafter called the Squibb Plan), was organized for the purpose of promoting and increasing the distribution and sale of the petitioner's products. Pursuant to the plan, of which the organization of the Squibb Plan was a part, the distributors of the petitioner's products were enabled to participate in the petitioner's profits by subscribing at $50 per share for the class of stock of Squibb Plan known as "Distributors' Preferred Shares." In furtherance of that participation plan, by an agreement between the petitioner and Squibb Plan entered into August 14, 1929, the petitioner agreed to make certain payments to Squibb Plan based upon the amount of net purchases made from the petitioner by holders of distributors' preferred shares, and, in addition, to sell to Squibb Plan one share of common stock of the petitioner at a price of $50 per share for each share of distributors' preferred shares issued to the distributors of petitioner's products. During the year 1929, in which the agreement between the petitioner and Squibb Plan was entered into, common stock of the petitioner was selling at a range of from $46 to $82 per share.

Petitioner had on hand no shares of its common stock to sell to Squibb Plan, and to carry out the agreement purchased shares of its own stock in the open market.

During 1932 the petitioner sold shares of stock purchased in the open market as follows:

| | Shares | Selling price | Cost | Profit |
|---|---|---|---|---|
| Common stock sold to: | | | | |
| Squibb plan | 6, 050 | $302, 500. 00 | $227, 167. 50 | $75, 332. 50 |
| Employees | 70 | 3, 101. 00 | 2, 785. 00 | 316. 00 |
| Preferred stock sold to individuals | 50 | 4, 540. 00 | 4, 425. 00 | 115. 00 |
| Total | 6, 170 | 310, 141. 00 | 234, 377. 50 | 75, 763. 50 |

All but 70 shares of the common stock of the petitioner sold by it in 1932 were purchased in the open market for the purpose of enabling it to fulfill its contractual obligation with Squibb Plan in accordance with the agreement of August 14, 1929. The 70 shares of its common stock sold to several of its employees during 1932 were sold upon the exercise of warrants held by the employees which had theretofore been granted by the petitioner in consideration of the employees' efforts in promoting the success of Squibb Plan by securing subscriptions for its preferred shares.

In this proceeding the petitioner submits that:

The accretion represented by the excess of consideration received by the Petitioner upon reissue of its shares over the consideration given in acquiring such shares is capital and is not income within the definition of gross income in Section 22 (a) of the Revenue Act of 1932.

The respondent, on the other hand, contends that the profit of $75,763.50 was taxable profit of the petitioner for 1932.

Gross income as defined by section 22 of the Revenue Act of 1932 broadly includes:

* * * gains, profits, and income derived from * * * sales, or dealings in property, * * * the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

In *Irwin* v. *Gavit*, 268 U. S. 161, 166, the Supreme Court, in rejecting the contention that certain payments there involved did not constitute income, said:

* * * If these payments properly may be called income by the common understanding of that word and the statute has failed to hit them it has missed so much of the general purpose that it expresses at the start. Congress intended to use its power to the full extent. *Eisner* v. *Macomber*, 252 U. S. 189, 203, * * *

In *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84, the Court, referring to a similar section of a previous act, said that the statute reveals in its provisions an intention on the part of Congress to tax "pretty much every sort of income subject to the federal power." Cf. *United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88.

In view of the all-inclusive terms of the statute it is evident that the profit of $75,763.50 realized by the petitioner from the sale of its own shares of stock in 1932 is subject to tax unless the transaction can be considered a capital transaction. As stated in *Commissioner* v. *Woods Machine Co.* (C. C. A., 1st Cir.), 57 Fed. (2d) 635; certiorari denied, 287 U. S. 613:

Whether the acquisition or sale by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature

of the transaction involved. * * * [Citing *Walville Lumber Co.* v. *Commissioner*, 35 Fed. (2d) 445; *Spear & Co.* v. *Heiner*, 54 Fed. (2d) 134.]

In the *Woods Machine Co.* case the taxpayer, in settlement of a patent infringement suit, received shares of its own capital stock which it retired, and the question was whether such acquisition gave rise to taxable gain. The court held that if stock is acquired or parted with in connection with the readjustment of the capital structure, capital gain would not be realized, but further stated:

> * * * But where the transaction is not of that character, and a corporation has legally dealt in its own stock as it might in the shares of another corporation, and in so doing has made a gain or suffered a loss, we perceive no sufficient reason why the gain or loss should not be taken into account in computing the taxable income. * * *

Similarly, in *Allyne-Zerk Co.* v. *Commissioner* (C. C. A., 6th Cir.), 83 Fed. (2d) 525, the transaction in which the taxpayer received some of its own stock as partial consideration for a sale of its assets was regarded as taxable. To the same effect see *Commissioner* v. *Boca Ceiga Development Co.* (C. C. A., 3d Cir.), 66 Fed. (2d) 1004. In the last named case the court stated:

> The Board's decision that a corporation realizes neither a gain nor loss from the purchase of its stock was in keeping with its position at the time when it determined this case (*Houston Brothers Company*, 21 B. T. A. 804; *S. A. Woods Machine Company*, 21 B. T. A. 818; *Schiller Piano Company*, 23 B. T. A. 376), although its earlier decisions were to the contrary. *Behlow Estate Company*, 12 B. T. A. 1365; *New Jersey Porcelain Company*, 15 B. T. A. 1059. Meanwhile, the courts have held that a corporation acquiring its own stock may recognize a gain or loss provided the purpose of the transaction was not merely a capital readjustment [*Johnson* v. *Commissioner* (C. C. A.) 56 F. (2d) 58, certiorari denied 286 U. S. 551, 52 S. Ct. 502, 76 L. Ed. 1287], but a sale of property. *Walville Lumber Company* v. *Commissioner*, 35 F. (2d) 445 (C. C. A. 1); *Spear & Co.* v. *Heiner*, 54 F. (2d) 134 (D. C. W. D. Pa.); *Commissioner* v. *S. A. Woods Machine Company*, 57 F. (2d) 635, 636 (C. C. A. 1). Since these decisions, the Board has adopted the rule laid down by the courts. *Houghton and Dutton Company*, 26 B. T. A. 52.

The Board reached a like conclusion in *R. J. Reynolds Tobacco Co.*, 35 B. T. A. 949.

The petitioner contends that the purchase and sale of its own shares of stock was not for the purpose of deriving a profit from the transactions involved, but was necessitated by the agreement which it had entered into with Squibb Plan on August 14, 1929. We are of the opinion that it is immaterial that the transactions were necessitated by the agreement which it had with Squibb Plan. The petitioner admittedly realized a profit of $75,763.50 from the sale of its own shares of stock which it previously had purchased in the open market. That profit is clearly taxable.

*Judgment will be entered under Rule 50.*