## BIG LAKE OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6449.

Circuit Court of Appeals, Third Circuit.

Feb. 18, 1938.

Rehearing Denied April 19, 1938.

Edgar J. Goodrich, of Washington, D. C., and S. Leo Ruslander, of Pittsburgh, Pa., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON, THOMPSON, and BIGGS, Circuit Judges.

THOMPSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals determining a deficiency in the petitioner's income tax for 1927. The issue is whether the amount of $598,571.01, the agreed fair market value of certain shares of common stock received by the petitioner, should be included in the petitioner's taxable income for 1927. The determination of this issue is dependent upon whether the shares were received by the petitioner in 1927 or in some prior year.

The shares of stock were acquired by the petitioner under the following circumstances: The petitioner and others, hereinafter referred to as the producers, were engaged in producing and selling petroleum oil from wells in Reagan county, Texas. In order to procure access to pipe lines by which to transport the oil to market, the petitioner and the producers, in a contract dated October 22, 1924, agreed to sell to Marland Oil Company, hereinafter referred to as Marland, or its nominee, all the oil they should produce up to an agreed maximum amount. Marland agreed to organize Reagan County Purchasing Company, Inc., hereinafter referred to as Reagan, and to provide the necessary working capital for Reagan by the purchase of its preferred stock at par. This stock was to be retired out of the profits of the company. Marland was to receive 51 per cent. of the common stock. The petitioner and the producers were to share the remaining 49 per cent. temporary certificates for which were to be issued in the name of the petitioner for one-half and in the names of the producers jointly for the other half. The final several ownership of the 49 per cent. was to be determined in accordance with the terms of a separate agreement between the petitioner and the producers. This agreement was evidenced by a letter dated October 19, 1924, in which it was agreed that the division be made among the petitioner and the producers as soon after December 1, 1926, as convenient, based proportionately upon the amount of oil which each should deliver towards the daily quota of 20,000 barrels during a test period from December, 1925, to December, 1926. In a contract dated November 24, 1924, the petitioner and the producers agreed to sell to Reagan, and Reagan agreed to purchase, a maximum of 20,000 barrels of oil daily. Reagan likewise agreed to provide the necessary pipe lines. On January 2, 1926, an escrow agreement was executed which provided that the temporary certificates issued in the names of the petitioner and the producers be deposited with the escrow agent, and that the shares of stock represented by the certificates could not be sold, assigned, or transferred (except to Marland, the petitioner, or to the producers) so long as any of the preferred stock had not been retired. The certificates were deposited with the escrow agent on March 12, 1926.

During the test period the petitioner and the producers each delivered more than 10,000 barrels of oil daily; thus entitling the petitioner to one-half of the 49 per cent. of common stock and the producers to one-half. The last remaining preferred stock was retired and the escrow was terminated in January, 1927. The petitioner received a certificate for 2,450 shares, free of restrictions in March, 1927; the shares having an agreed fair market value of $598,571.01. The petitioner did not report any income from the receipt of these shares for 1927 or for any prior year. The Commissioner determined that the petitioner received the shares in 1927.

Section 213 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 23, requires that all items of gross income shall be included for the taxable year in which received by the taxpayer. Stoner v. Commissioner of Internal Revenue, 3 Cir., 79 F.2d 75, certiorari denied Helvering v. Stoner, 296 U.S. 650, 56 S.Ct. 309, 80 L.Ed. 462; Taylor v. Commissioner of Internal Revenue, 7 Cir., 89 F.2d 465; United States v. Safety Car Heating Co., 297 U.S. 88, 95, 56 S.Ct. 353, 356, 80 L.Ed. 500. Until 1927, when the escrow was terminated, the petitioner not only lacked either actual possession or control, but the number of shares to which it would ultimately be entitled was dependent upon future tests and the shares themselves were burdened with restrictions until and if Reagan earned sufficient profits to retire the preferred shares. It is our opinion that the petitioner realized no income pending determination of the true and ultimate ownership and that this did not occur until 1927.

The decision of the Board of Tax Appeals is affirmed.