**TRIPLEX SAFETY GLASS CO. OF NORTH AMERICA v. LATCHUM.**

**Civ. No. 197.**

District Court, D. Delaware.

March 23, 1942.

---

[1] No opinion for publication.

Howard Duane, of Wilmington, Del. (Ambrose L. O'Shea and John R. Brook, both of New York City, of counsel), for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, Milford S. Zimmerman, and Robert R. Reynolds, Jr., Sp. Assts. to Atty. Gen., for defendant.

CLARK, W., Circuit Judge.

Plaintiff taxpayer is suing for a refund on the payment of taxes assessed against it for the year 1937. The litigation is centered about the payment of $1,012,191.08 by the Pittsburgh Plate Glass Co. and Duplate Corp. to the plaintiff on July 29, 1937, on account of a patent infringement. The infringement action was begun in 1928 and although the first interlocutory decree of the District Court, holding that Pittsburgh had infringed upon plaintiff's patent was entered on December 5, 1931, the amount of damage was not definitely fixed until $1,012,191.08 was paid on July 29, 1937.

The payment of damages on account of patent infringement constitutes properly taxable income and is not the return of capital.[1] Plaintiff claims, however, that from its inception in 1926 through

[1] United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; Com'r v. S. A., Woods Machine Co., 1 Cir., 57 F.2d 635; Central R. R. of New Jersey v. Com'r, 3 Cir., 79 F.2d 697, 101 A.L.R. 1448. See Taxation-Federal Taxation-Gross Income-Value of Property Received By Taxpayer In Settlement of Suit In Equity-Legislative Definition of Income-Judicial Definition of Income, 4 George Washington Law Review 157.

1933 it used the accrual method of bookkeeping. Under this system of accounting plaintiff reported income from patent litigation as accrued in its tax returns of 1930 and 1932. These returns showed a net loss with no tax due.[2] Since income from patent infringement litigation was reported in 1930 and 1932, plaintiff asserts that this same income may not be taxed in 1937. Plaintiff was in error, however, when it attempted to accrue the income from patent litigation in 1930 and 1932. The year in which such income accrues is that period when the liability and amount thereof are no longer contested but become definitely fixed and certain.[3] Pittsburgh's payment of $1,012,191.08 could not have been income to the plaintiff even under the accrual method of accounting until 1937, since the amount of liability was not fixed until this date. The exact extent of liability was uncertain and in dispute until the very day of payment by Pittsburgh. Plaintiff's reporting of income from the patent litigation in its tax returns of 1930 and 1932 has no bearing upon the fixing of its taxable income for the year 1937. The Commissioner has not sought a reassessment for 1930 and 1932;[4] he has made an assessment for income accruing in 1937.[5] In so doing he is not estopped from taxing income in the correct year by the fact that he has previously collected a tax on the same income for a year in which it did not accrue.[6] The Commissioner's acquiescence in returns filed by taxpayer in previous years is not a basis for an assertion of estoppel.[7] Likewise irrelevant is plaintiff's claim that Pittsburgh Plate Glass Co. has previously paid an income tax on the fund here in question. The Pittsburgh Plate Glass Co. is admittedly an entirely different and separate taxpayer from the plaintiff. The fact that it may have paid federal income taxes upon some profits derived by it from the unwarranted use of the product covered by plaintiff's patent has no bearing on plaintiff's taxability. Even if the fund on which Pittsburgh had paid an income tax were identical to the one here in question, the Commissioner would not be estopped from collecting from the plaintiff.[8]

Plaintiff's remaining contentions are directed to its payment of an undistributed profits tax for 1937 totalling $13,037.86. In its complaint plaintiff asserts that this tax was "assessed and exacted under duress and in fear of the aforesaid threats to impose the penalties, fines, impositions and forfeitures, both civil and criminal, as aforesaid."[9] The plaintiff states that the defendant in the attempt to prevent plaintiff, then in the process of liquidation, from distributing its funds without making provision for the payment of the taxes determined to be due from it for the year 1937 "threatened that if plaintiff failed, neglected or refused to keep such sums undistributed, to impose upon the plaintiff, its officers and directors, the penalties and forfeitures provided to be imposed by the Revenue Act in force in 1937, for distributing or disposing of assets without adequate provision for the

---

2 On account of certain adjustments made by the Commissioner of Internal Revenue having no relation to the item of patent infringement damages, a deficiency of income taxes was assessed for 1930 of $835.52, which together with interest of $86.57, or a total of $922.09, was paid by the plaintiff.

3 United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; Lucas v. American Code Co., 280 U.S. 445, 451, 452, 50 S. Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; North American Oil Consolidated v. Burnet, 286 U.S. 417, 423, 52 S.Ct. 613, 76 L.Ed. 1197; First Mechanics Bank v. Com'r, 3 Cir., 91 F.2d 275, 279; First Bancredit Corp. v. Flexlume Corp., D.C., 10 F.Supp. 1015. Cf. Com'r v. Alamitos Land Co., 9 Cir., 112 F.2d 648. See Accrual As Income of Contingent Claims on March 1, 1913, 45 Yale Law Journal 948; Internal Revenue-Time of Accrual of Income 30 Illinois Law Review 537.

4 The statute of limitations now bars such a reassessment. Internal Revenue Code, § 275, 26 U.S.C.A. Int.Rev.Code, § 275.

5 Each taxable year constitutes a period of annual accounting and a separate cause of action. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; Woolford Realty Co. v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L. Ed. 1128; Helvering v. Morgan's, Inc., 293 U.S. 121, 55 S.Ct. 60, 79 L.Ed. 232.

6 Chemung Canal Trust Co. v. Com'r, 30 B.T.A. 230, affirmed, 2 Cir., 74 F.2d 1009, certiorari denied 295 U.S. 751, 55 S.Ct. 829, 79 L.Ed. 1695.

7 Burnet v. Porter, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996; Seeley v. Helvering, 2 Cir., 77 F.2d 323; Guaranty Trust Co. v. Com'r, 2 Cir., 98 F.2d 62.

8 Emery v. Com'r, 1 Cir., 78 F.2d 437.

9 Plaintiff's complaint, paragraph 48 (Sixth Cause of Action).

payment of taxes."[10] The plaintiff's claim is of course ridiculous. It was a part of defendant's duty to protect the revenues of the United States. He was obviously performing his duty and his "threat" to impose the statutory penalties provided for by the applicable Revenue Act cannot constitute duress.[11] It is true that plaintiff was assessed a surtax on undistributed profits merely because it held undistributed a fund by which it might pay its normal income taxes. The provision for the taxation of undistributed profits[12] makes no distinctions based upon the reasons why funds are undistributed. The mere fact of non-distribution regardless of motive is sufficient for taxation.

Plaintiff's complaint is dismissed and judgment entered for the defendant.

---

[10] Plaintiff's complaint, paragraph 41 (Sixth Cause of Action).

[11] See Burnet v. Chicago Railway Equipment Co., 282 U.S. 295, 51 S.Ct. 137, 75 L.Ed. 349; United States v. Southern Lumber Co., 8 Cir., 51 F.2d 956, 78 A.L.R. 619.

[12] Revenue Act of 1936, § 14(b), 26 U.S.C.A.Int.Rev.Acts, page 823.