DECISION
 I. INTRODUCTION
Plaintiff appeals Defendant's denial of her claimed child care credit and working family credit, and an income adjustment of $10,571 made to her 2004 Oregon Individual Income Tax Return. A trial was held on July 8, 2008, in the courtroom of the Oregon Tax Court, Salem, Oregon. Robert W. Ruff (Ruff), Certified Public Accountant, appeared and testified on behalf of Plaintiff. Although present at the trial, Plaintiff did not testify. Allen Schweigert (Schweigert), Tax Auditor, appeared and testified on behalf of Defendant.
At trial, the parties stipulated that Plaintiff paid $1,000 in qualified child care expenses. The parties also stipulated that reimbursements in the amount of $5,733 were not income and were accounted for as follows: Office Supplies — $972; Postage — $764; Due from Shareholder — $315; Repairs — $1,356; Advances — $1,467; Child Care — $630; Contributions — $40; and Trash — $189. (Ptf's Ex D2.)
The only issue before the court is whether Defendant's proposed income adjustment in the amount of $4,838 is income to Plaintiff.
Plaintiff's Exhibits 1 through 24, D2 through D26, D29 through D33, E1 through E3, and Defendant's Exhibits A1 through A4 were offered and received without objection. Plaintiff also *Page 2 
submitted two documents titled Written Status Reports prepared by Schweigert and dated October 15, 2007, and January 4, 2008, along with nine unnumbered pages of receipts. Those exhibits were received without objection.
 II. STATEMENT OF FACTS
Defendant proposed an income adjustment in the amount of $10,571 to Plaintiff's 2004 Oregon state income tax return. Defendant did not submit documents to the court that showed how the adjustment was determined. Defendant testified that its proposed income adjustment was determined after a complete review of Plaintiff's 2004 bank statements. The parties stipulated that $5,733 of the proposed income adjustment was not income to Plaintiff. There is no dispute that, in 2004, Plaintiff deposited $4,838 in her personal bank account in excess of wages from her employer, Robert W. Ruff CPA, PC (Corporation).
Ruff testified that Plaintiff, as an employee, purchased certain items on behalf of Corporation and for him personally. Ruff testified that Corporation reimbursed Plaintiff upon receiving a receipt or a reasonable explanation for an expense. Ruff also testified that personal items for him were reimbursed as "Due from Shareholder." Ruff testified that he did not give cash or checks to Plaintiff in advance, even if he knew Plaintiff was purchasing an item for Corporation or for him. In addition, Ruff testified that Plaintiff continued to receive her regular compensation during the 2004 tax year. (See Ptf's Exs 8-24.)
Ruff testified that the reimbursements coincided with the dates of the expenditures. Both Ruff and Schweigert testified that the checks for disputed reimbursements were issued from Corporation's business account. (Ptf's Exs E1-3; Ptf's Exs 8-24.) Ruff testified that the majority of the checks contained an itemized list allocating each dollar amount Corporation *Page 3 
paid to Plaintiff. (Ptf's Exs 8-24.) Plaintiff submitted copies of Corporation's checks issued to her. (Id.; Ptf's Exs E1-3.) Two checks do not contain itemized listings and total $2,100. (Ptf's Exs E1-E2.) The remainder of the checks show allocations for the total amount of the check among various items. (Ptf's Exs 8-24.) The itemized reimbursements on the checks totaled $6,703 as follows: Trash — $500; Telephone — $110; Gifts to Clients — $1,100; Due from Shareholder — $355; Postage — $908; Office Supplies — $1,406; Repairs — $1,631;[1] Security — $238; Other — $88; and Miscellaneous — $367. (Ptf's Exs 8-24.)
Schweigert testified that Plaintiff submitted numerous documents to Defendant to support her allegation that any amounts she received were reimbursements and not income. Schweigert testified that several of the submitted receipts contained dates from years other than the 2004 tax year at issue or showed that Corporation made payments direct to the vendor providing the service. He also testified that Plaintiff failed to provide receipts for various items totalling $2,006, including: Postage — $485; Trash — $311; Telephone — $110; and Gifts for Clients — $1,100. (Ptf's Ex D2.)
A. Postage
Ruff testified that a number of Corporation's 2004 receipts were "inadvertently shredded." Ruff testified that Corporation paid Plaintiff $1,249 as a reimbursement for postage. Ruff also testified Corporation spent approximately $1,249 on postage during each of the three years prior to and following the 2004 tax year. Of the $1,249 paid to Plaintiff, Defendant testified that receipts were not available for $485. (Ptf's Ex D2.) Plaintiff submitted reimbursement checks in the amount of $908 for postage (Ptf's Exs 8-24.), along with faded postal receipts from 2004. (Ptf's Ex D16.) *Page 4 
B. Trash and Repairs
Ruff testified that Corporation paid Plaintiff $311.00 as a reimbursement for paying "day laborers" to remove Corporation's office carpeting in preparation for new office flooring to be installed. He testified that $311 was allocated to the category labeled "Trash." In addition, Ruff testified that Plaintiff paid the workers in cash and did not receive a receipt from the workers. Ruff testified that Corporation paid Plaintiff $1,300 and $200, with checks respectively dated November 10 and November 15, 2004, as reimbursements for purchasing new flooring materials for Corporation. (Ptf's Ex 4.)
C. Phone and Gifts
Ruff testified that Corporation paid Plaintiff $110.00 as a reimbursement for purchasing a pre-paid cellular phone for one of his business trips. (Ptf's Ex 16.) Ruff also testified that Corporation paid Plaintiff $337 as a reimbursement for purchasing gifts for clients' children to put under Corporation's Christmas tree. (Ptf's Ex 9.) Plaintiff submitted copies of reimbursement checks for the balance ($763) of the $1,100 labeled Gifts to Clients. (Ptf's Exs 8-24.)
D. Other
Schweigert testified that Plaintiff provided Defendant with credit card statements from the wrong tax year. Ruff conceded in his testimony that Plaintiff accidently provided Defendant with credit card statements from tax year 2005 instead of tax year 2004. Defendant denied Plaintiff's claimed credit card reimbursements totalling $2,832[2] and allocated as follows: Office — $469; Security — $238; Repairs — $525; Miscellaneous — $1,525; and Childcare — $75. (Ptf's Exs D2.) *Page 5 
Ruff also testified that the Corporation reimbursed Plaintiff $150.00 allocated as Security for a payment Plaintiff made to the veterinarian. Plaintiff submitted a veterinarian ledger, which shows a payment of $112.48. (Unnumbered document, Veterinarian Ledger, Aug 31, 2004.)
 III. ANALYSIS
The issue before the court is whether Plaintiff received income in excess of her wages from her employer, Corporation, in tax year 2004.
A. Proposed income adjustment
Defendant alleges that Plaintiff's bank statements show she received $10,571 in excess of her regular wages. Defendant may prove the existence of unreported income "by any practical method available in the circumstances of the particular situation." Flowers v. Dept. ofRev., 16 OTR-MD 151, 153 (1999) (Flowers), (citing U.S. v. Doyle,234 F2d 788, 793 (7th Cir 1956)); see also DiLeo v. C.I.R., 96 TC 858, 867
(1991), aff'd 959 F2d 16 (2nd Cir 1992) (concluding that "bank deposits reconstruction of income is an acceptable method to determine income."). The court received numerous checks that show payments from Corporation to Plaintiff. Those checks show Plaintiff received $8,803 in excess of her wages. (Ptf's Exs E1, E2, 8 — 24.) Defendant did not submit copies of bank statements or other documents to supports its claim that Plaintiff's Oregon state income tax return should be adjusted in the amount of $10,571. However, Schweigert's Written Status Report dated January 4, 2008, which Plaintiff submitted as evidence, stated that "plaintiff concedes that there is $10,571 of checks received in excess of wages." (Ptf's Ex Written Status Report at 1, Jan 4, 2008.) Based on the evidence presented, the court concludes that the proposed income adjustment can be no more than $10,571. *Page 6 
B. Gross income defined
In analyzing Oregon law governing taxable income, the court is guided by the legislature's expressed intent to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of taxable income of individuals * * *." ORS 316.007.[3] Oregon imposes an income tax "for each taxable year on the entire taxable income" of an Oregon resident. ORS 316.037(1)(a). "Taxable income" is a resident's federal taxable income as defined by the laws of the United States, with modifications, additions, and subtractions provided by the Oregon laws applicable to personal income taxation. ORS 316.022(6); ORS 316.048. As an Oregon resident, Plaintiff's taxable income is determined under federal law and the IRC. In order to determine taxable income, the IRC begins with the calculation of an individual's gross income. See IRC §§ 61-63.[4]
"Gross income" is defined as "all income from whatever source derived * * *." IRC § 61(a) (emphasis added). As a result, all income is included in an individual's gross income unless specifically excluded. IRC § 61(b).
Oregon has generally adopted "administrative and judicial interpretations of the federal income tax law." ORS 316.032(2). The United States Supreme Court has defined income as "instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." C.I.R. v. Glenshaw Glass Co.,348 US 426, 431 (1955). Furthermore, all realized gains and forms of enrichment are included as income in calculating a taxpayer's gross income.Collins v. C.I.R., 3 F3d 625, 630 (2nd Cir 1993) (citing Glenshaw GlassCo., 348 US at 430; Commissioner v. Kowalski, 434 US 77, 82-83 (1977)). Conversely, the return of capital is not an undeniable accession to wealth. Concord Instruments Corp. v. C.I.R., TCM 1994-248,1994 WL 232364 (citing United States v. Safety Car Heating Co., 297 US 88, 98
(1936)). Here, *Page 7 
it is undisputed that Plaintiff received amounts in excess of wages; however, the court must consider whether the payments undeniably increased Plaintiff's wealth. Therefore, the court must determine if the additional amounts Plaintiff received are, in fact, income.
C. Income requires gain, profit, or benefit to a taxpayer.
"It is well settled that the mere receipt and possession of money does not by itself constitute taxable income." Lashells' Estate v.C.I.R., 208 F2d 430, 435 (6th Cir 1953) (Lashells' Estate). To have income, an individual has to in fact receive a "statutory gain, profit, or benefit." Id. at 434. This court has previously stated that "[o]nly if a taxpayer can show a requirement to make prompt repayments or that a taxpayer is acting as a mere agent or conduit is the money not deemed gross income." Flowers, 16 OTR-MD at 153 (citing Lashells' Estate,208 F2d 430; Diamond v. C.I.R., 56 TC 530, 541 (1971), aff'd, 492 F2d 286
(7th Cir 1974)).
Like the taxpayer in Lashells' Estate, Plaintiff alleges that she was a conduit. In Lashells' Estate, a company agreed to perform work for a customer. Lashells' Estate, 208 F2d at 433. However, the company hired a subcontractor to perform the work. Id. The company charged its customer the same amount it was charged by the subcontractor, collected the money from the client, and then paid the subcontractor. Id. The Sixth Circuit held that the company was a conduit and had no profit or gain to include in taxable income. Id. at 435 (holding that the company had income in a second transaction based on the difference between the price paid by the customer and a discounted price paid to the subcontractor).
Ruff testified that it was part of Plaintiff's job to purchase items for Corporation and for Ruff prior to being reimbursed for the purchases. Plaintiff alleges that she was the conduit in which money and goods flowed between vendors and Corporation or Ruff. That is similar to the described transaction in Lashells' Estate. The company inLashells' Estate facilitated the flow of goods and money between the actual purchaser and seller, with neither the intention of making a *Page 8 
profit nor actual profit from the transactions. Those arrangements are examples of "in-and-out transactions," where goods and money flow in and out of a conduit that merely helps facilitate a transaction. In this case before the court, the record contains evidence of transactions between Plaintiff, Corporation, Ruff, and third party vendors where Plaintiff acted as a mere conduit. Therefore, as demonstrated inLashells' Estate, the court could find Plaintiff was merely reimbursed for payments made on behalf of her employer.
D. Burden of proof
The burden of proof is on the party seeking affirmative relief in proceedings before the tax court. ORS 305.427. Plaintiff is the party seeking affirmative relief and the burden of proof falls upon her. The burden of proof is a preponderance of the evidence. Id. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971) (citing McPherson v. Cochran, 243 Or 399, 404 (1966)).
It is the taxpayer's responsibility to keep adequate records, and a taxpayer is acting at her own peril in failing to do so. Brenner v.Dept. of Rev., 9 OTR 299, 305-06 (1983). "If a taxpayer cannot account for the disposition of funds received, they must be considered income to her." Flowers, 16 OTR-MD at 153 (1999) (citing Lawrence v.Commissioner, 52 TCM (CCH) 870 (1986)).
Defendant relied on Plaintiff's bank statements to support its proposed income adjustment. Defendant argues that Plaintiff canonly meet her burden of proof by submitting receipts. This is incorrect; checks, bookkeeping entries, other documents, and testimony have also been found to satisfy the burden of proof. Reed v. Dept. of Rev.
(Reed), 310 Or 260, 266-67 (1990); Liddy v. C.I.R., 808 F2d 312, 314-15
(4th Cir 1986) (Liddy); Lashells' Estate, 208 F2d at 434. The court will consider received documents and testimony as explained below. *Page 9 
1. Testmony alone is insufficient.
The Fourth Circuit Court of Appeals in Liddy held that a denial of personal benefit from funds is insufficient to overcome a taxpayer's burden of proof where documentary evidence once available is not provided to the court, even though the court found the taxpayer generally to be a credible witness. Liddy, 808 F2d at 315. The court was not persuaded by the taxpayer's attempt to meet the burden solely with his own testimony. Id. Another factor in the court's decision was that the testimony could have been verified if the taxpayer had not destroyed the supporting documentation. Id. In contrast to the taxpayer inLiddy, Plaintiff did not testify; rather, she produced some documentary evidence to support her claim, and her employer testified.
Plaintiff claimed various reimbursed amounts listed on her credit card statements were not income. However, as in Liddy, Plaintiff failed to submit documentary evidence and relied solely on testimony by Ruff to challenge Defendant's denial of reimbursements for items purchased by credit card. Plaintiff provided Defendant with credit card statements for the wrong tax year. Ruff testified that the credit card company provided Plaintiff with 2005 tax year statements. Plaintiff had ample time to request credit card statements for tax year 2004. Where corroborative evidence is, or could be available, Plaintiff's burden of proof will not be met with testimony alone. Therefore, Plaintiff did not satisfy her burden of proof for the claimed credit card reimbursements.
2. Need for corroborative evidence
The Oregon Supreme Court in Reed examined all of the evidence and its relationship to other evidence in deciding that a taxpayer satisfied his burden of proof by a preponderance of the evidence. Reed, 310 Or 268
(holding taxpayer was entitled to payroll deductions). The court stated that "[g]enerally speaking, if a check is labeled as a payroll check, and its amount or date is not inconsistent with other evidence, we have accepted Taxpayer's claim that it was a payroll check." Id. at 267. A taxpayer's claim is strengthened when checks match other *Page 10 
evidence, such as employee time sheets, copies of Form 1099, and business expense ledgers and listings. Id. at 266-67. The court also noted that many of the taxpayer's checks were labeled as payroll checks, and some included specific notations as to time worked and hourly pay rates. Id. In sum, an employer's bookkeeping entries on issued checks will be persuasive when they match other evidence.
Like the taxpayer in Reed, Plaintiff, in the present case, also submitted employer checks containing bookkeeping entries and other evidence matching the entries on the checks. The checks submitted in the present case contain both generic categories along with specific references detailing the amount and category for the reimbursement. For example, some amounts allocated as "Gifts to Client" contained the name of the client, and amounts allocated as "Repair" contain references such as "Floor and Paint." Additionally, like the checks in Reed, the checks submitted by Plaintiff list the amounts allocated as wages and employee advances. The court finds the bookkeeping entries and specific references on the checks persuasive when they are corroborated by other documents and testimony.
The documents and testimony are persuasive in finding that the disputed amounts for Trash — $311, Telephone — $110, Postage — $144, Office Supplies — $434, Gifts to Clients — $1,100, and Repairs — $275 were not income to Plaintiff.[5] Plaintiff met her burden of proof for those amounts.
Plaintiff did not meet her burden for the $238.00 allocated to Security. The reimbursement was in excess of the amount Plaintiff spent. As in Lashells' Estate, Plaintiff must include in income the difference between the $112.48 veterinarian ledger and Corporation's $150.00 reimbursement allocated as Security. The burden falls on the Plaintiff to persuade the *Page 11 
court that she returned this amount or was entitled to the full amount of the reimbursement. As there is nothing in the record showing that Plaintiff returned this excess amount or was entitled to the full amount of the reimbursement, she did not meet this burden. Therefore, Plaintiff received a gain and benefit from this transaction in the amount of $37.52, which is income. Plaintiff only satisfied her burden of proof for $200.48 of the amount allocated to Security.
E. Plaintiff's burden not met.
Although the court is persuaded that Plaintiff was a mere conduit for some transactions, the court examined the evidence in detail and determined Plaintiff did not properly account for the full amount of her claimed reimbursements.
1. Amounts allocated as Miscellaneous and Other
Plaintiff failed to submit corroborative evidence for all the amounts allocated on the reimbursement checks. Specifically, the amounts listed as "Miscellaneous" and "Other." (Ptf's Exs 16 and 19.) The court is not persuaded that the amounts allocated as "Miscellaneous" and "Other" were not income to Plaintiff. No testimony was given as to those specific amounts, the checks do not specifically state what the amounts were for, and there is nothing in the record explaining those amounts. It is Plaintiff's burden to provide evidence and persuade the court by a preponderance of evidence; she failed to do this for the amounts allocated to Miscellaneous for $367 and Other for $88. (Id.)
2.Postage
Plaintiff failed to provide evidence to support her claim that postage in the amount of $341 was paid by her. Faded postal receipts were insufficient. The reimbursement Plaintiff received for that amount is income to her. *Page 12 
3. Credit card statements and receipts
During Defendant's audit, Plaintiff provided credit card receipts and statements to show payments received were reimbursements. Defendant did not agree that those documents showed that the reimbursements were not income. No statements were submitted to the court and the credit card receipts that were submitted were not linked to reimbursements. As previously stated, it is Plaintiff's burden to provide the court with the adequate records. Therefore, those documents were inadequate to account for the additional funds ($1,430) Plaintiff received for items she stated were purchased for Corporation using her credit card.
 IV. CONCLUSION
Plaintiff had the burden of proof to show that funds deposited in her bank account were not income. Plaintiff provided documents and testimony that were persuasive in finding that the following disputed amounts, which total $2,574.48, were reimbursements and not income: Trash — $311.00; Telephone — $110; Postage — $144.00; Office Supplies — $434.00; Repairs — $275.00; Gifts to Clients — $1,100.00; and Security — $200.48. The amounts stated above for office supplies, repairs, and security were reported by Defendant as disputed credit card charges. (Ptf's Ex D2.) Plaintiff failed to provide evidence to support her claim that payment for postage in the amount of $341 was a reimbursement, and not income.
The excess repayment amount on Corporation's reimbursement check of $37.52 which was allocated to Security and amounts allocated as Other ($88.00) and Miscellaneous ($367.00) are income. Those amounts were reported by Defendant as disputed credit card charges. (Ptf's Ex D2.) The evidence for those amounts is incomplete and did not provide the court with sufficient information to persuade the court that those amounts are not income. Plaintiff did not *Page 13 
meet her burden of proof. Finally, Plaintiff's lack of evidence was insufficient to carry her burden of proof for the balance of disputed credit card charges in the amount of $1,430.00. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff received payments in excess of her wages in the amount of $10,571.00. Of that amount, $8,307.48 was not income to Plaintiff, and $2,263.52 was income to Plaintiff in tax year 2004; and
IT IS FURTHER DECIDED that Plaintiff is entitled to claim $1,000.00 as qualified child care expenses for tax year 2004.
Dated this ___ day of September 2008.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
This document was signed by Presiding Magistrate Jill A. Tanner onSeptember 30, 2008. The Court filed and entered this document onSeptember 30, 2008.
[1] The checks allocated $1,331 to Floor and Paint, and $300 to Repairs. They have been combined under the general category of "Repairs." (See Ptf's Ex D2.)
[2] Defendant incorrectly recorded the disputed amounts for security and child care in the credit card column of his 2004 reimbursements worksheet. (Ptf's Ex D2.) The correct amounts are stated above.
[3] All references to Oregon Revised Statutes (ORS) are to 2003.
[4] All references to IRC are to 2004.
[5] Defendant classified the disputed amounts for office, security and repair as credit card charges. (Ptf's Ex D2.) *Page 1