**ATLANTIC USED AUTO PARTS, et al., Plaintiffs,**

v.

**CITY OF PHILADELPHIA, et al., Defendants.**

**Civil Action No. 96–3904.**

United States District Court, E.D. Pennsylvania.

March 7, 1997.

A. Charles Peruto, Philadelphia, PA, for Plaintiffs.

Leon A. King, II, Asst. City Solicitor, City of Philadelphia Law Dept., Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

Today we resolve the cross-motions for summary judgment of Plaintiffs and Defendant City of Philadelphia (the "City"). For the following reasons, summary judgment is granted in favor of the City on Plaintiffs' federal claims, the two unknown defendants are dismissed, and the pendent state law claims are remanded to the Court of Common Pleas for Philadelphia County.

## BACKGROUND

From 1985 to 1992, the City of Philadelphia (the "City") had a salvor's agreement (the "Agreement") with Thomas Venuto ("Venuto") doing business as Atlantic Used Auto Parts ("Atlantic"). Under this Agreement, Atlantic would "tow, take possession, and control the disposition ... of those abandoned vehicles ... to which it [was] directed by the [City's] Police Department." (Agreement, ¶ 1.) Atlantic would then collect a percentage of the fine levied by the state on the abandoned vehicles' owners, as well as a fee for towing and storing the vehicles. (Venuto Dep. at 61–62.) As to those vehicles never claimed, Atlantic could acquire "salvor's title" and then either repair and sell the cars or break them down for parts. *Id.* at 63. The Agreement, in turn, granted the City the right to inspect Atlantic's operation at any time and required that Atlantic "provide City with such additional information and data as may be required from time to time by Federal, State, or City authorities." (Agreement, ¶ 12.)

On October 10, 1991, members of the Philadelphia Police Department Auto Squad searched Atlantic's lot in accordance with the Agreement. (Venuto Dep. at 8.) On the lot the officers discovered numerous vehicles previously reported as stolen and car parts from which the vehicle identification numbers had been removed. The parties dispute whether Venuto was able to produce documentation establishing that Atlantic was in lawful possession of the vehicles at this time. (*See* Venuto Dep. at 13–21; City's Resp. to Pls.' Mot. at 1.) It is undisputed, however, that Venuto was arrested and charged with receiving stolen property and related offenses, and Atlantic's lot was closed for five days while the officers conducted a thorough inspection of the premises. The officers ultimately confiscated from the Atlantic lot numerous vehicles, parts and two guns. (Property Receipts Nos. 349936 through 349953, 349955 through 359971, 349979, and 349980; *see* Pl.'s Mot. Ex. D.) In a subsequent search of the lot on February 13, 1992, the officers confiscated three boxes of business records. (Property Receipt No. 359760; *see* Def.'s Resp. to Pls.' Mot. Ex. E.)

The City's District Attorney's Office initiated the criminal action against Venuto and proceedings continued until, on April 14, 1994, all charges were dismissed. Venuto contends that the charges were dropped after he produced receipts and tow orders for the vehicles in question to Charles Margiotti ("Margiotti"), the Assistant District Attorney handling the matter. (Venuto Dep. at 52–53). In an Affidavit filed in response to Plaintiffs' Motion, however, Margiotti states that neither Venuto nor his attorney ever provided him with any such documentation. (Margiotti Aff. ¶ 5; *see* Def.'s Resp. to Pls.' Mot. Ex. G.) As to why the charges were dismissed, the City states only that it was done "for other reasons." (Def.'s Resp. at 2.)

Following the dismissal of charges, Venuto filed a Petition for the Return of Property (the "Petition") in the Philadelphia Court of Common Pleas seeking to recover all the property that had been confiscated from Atlantic's lot. On November 9, 1994, upon consideration of the Petition, Judge Joseph I. Papalini issued an order which directed in its entirety as follows:

it is hereby ORDERED and DECREED that the Philadelphia Police Department return to Petitioner all property of whatever nature seized in the above-captioned matter no later than November 15, 1994. It is further ORDERED that the District

Attorney is granted leave to retain copies of Petitioner's business records, checkbooks and other relevant business documents.

(Order; *see* Def.'s Resp. to Pl.'s Mot. Ex. B.) To date, however, only the business records and one gun have been returned to Venuto. (Venuto Dep. at 52.) According to the City, Venuto was unable to demonstrate a legal right to the vehicles, parts, and the other gun and, thus, these remaining items were destroyed. (Def.'s Resp. to Pls.' Mot. at 2).

On April 15, 1996, Plaintiffs instituted the instant action against the City and two unknown individuals identified only as "John Doe" and "Jane Doe" in the Complaint.[1] Plaintiffs seek damages resulting from the City's failure to return the rest of the property confiscated from the Atlantic lot. Specifically, Plaintiffs allege that said failure violates their Fourth, Fifth and Fourteenth Amendment rights and seek compensatory and punitive damages pursuant to 42 U.S.C. §§ 1982 and 1983 for the alleged violations, as well as attorney's fees under § 1988.[2] Plaintiffs also assert two Pennsylvania claims seeking damages for the lost property and for alleged harm to Venuto's personal and professional reputation. Plaintiffs and the City have filed cross-motions for summary judgment, which we decide today.

## DISCUSSION

### I. The Doe Defendants

Before we reach the motions before the court, we address the status of the putative defendants John Doe and Jane Doe. Plaintiffs use these fictitious names to refer to the unknown individuals who allegedly "watched, guarded, and [ran]" the impound facility where the confiscated property was taken. (Complaint, ¶¶ 4, 5 and 19.) The Complaint

alleges further that Plaintiffs are "unaware if these Defendants are [the City's employees or independent contractors]," but they reserve "the right to amend this Complaint once these facts became known to them." (Complaint, ¶ 19.)

Discovery was completed in this matter on November 5, 1996. Plaintiffs have filed no such motion to amend nor have they attempted to serve any additional defendants with the instant Complaint. Nonetheless, the Doe Defendants remain parties to this action unless and until they are formally dismissed either by stipulation of the parties or by order of this Court. *See Howell v. Tribune Entertainment Co.,* 106 F.3d 215 (7th Cir.1997) ("in the federal judicial system a party becomes a defendant not when he is served but when the complaint against him is filed"); Fed.R.Civ.P. 3. In our Court, fictitious party names may be used "at least until reasonable discovery permits the actual defendants to assume their places." *Klingler v. Yamaha Motor Corporation, U.S.A.,* 738 F.Supp. 898, 910 (E.D.Pa.1990); *see also Johnson v. City of Erie, Pa.,* 834 F.Supp. 873, 878 (W.D.Pa.1993). We agree, however, that "[f]ictitious names must eventually be dismissed, if discovery yields no identities." *Scheetz v. Morning Call, Inc.,* 130 F.R.D. 34, 36 (E.D.Pa.1990). Rule 21 of the Federal Rules of Civil Procedure allows this Court to drop parties on "its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. We exercise our discretion under this rule to dismiss the two Doe defendants from this action because Plaintiffs have not ascertained their true identities.[3]

We now turn to our analysis of the cross-motions for summary judgment filed by Plaintiffs and the City, the lone defendant remaining in this case.

1. This action was filed originally in the Court of Common Pleas for Philadelphia County, but was removed pursuant to a notice of removal filed May 22, 1996. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

2. Plaintiffs do not allege that the initial search of the Atlantic lot and seizure of the property violated any constitutional rights. Nor does Venuto claim that his arrest and subsequent detention were unlawful. Rather, Plaintiffs limit their con-

stitutional claims to the violations allegedly stemming from the City's failure to return Plaintiffs' property despite Judge Papalini's Order.

3. We do so without prejudice, should such information subsequently become available. *See Scheetz v. Morning Call, Inc.,* 747 F.Supp. 1515, 1535 n. 32 (E.D.Pa.1990), *aff'd,* 946 F.2d 202 (3d Cir.1991).

## II. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

In making this determination, we must view all of the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

■ Finally, the mere fact that the parties have filed cross-motions under Rule 56(c) does not mean that the case will necessarily be resolved at the summary judgment stage. The court must consider the motions separately. Each party must still establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *United States v. Hall,* 730 F.Supp. 646, 648 (M.D.Pa.1990) (citing *Home for Crippled Children v. Prudential Ins. Co.,* 590 F.Supp. 1490, 1495 (W.D.Pa.1984)).

## III. Constitutional Claims

Plaintiffs seek compensatory and punitive damages against the City pursuant to both 42 U.S.C. §§ 1982 and 1983, and attorneys fees under § 1988. Plaintiffs move for summary judgment on these claims based on the undisputed fact that the City did not return numerous items to Plaintiffs despite Judge Papalini's Order. The City argues that we must enter summary judgment in its favor because Plaintiffs are not entitled to such relief under fundamental principles of constitutional law. Because of our disposition of the City's Motion, we do not reach the arguments raised by Plaintiffs.

■ Both Plaintiffs' § 1982 claim and their prayer for punitive damages under § 1983 plainly lack merit. The Supreme Court has long held that section 1982 "forbids both official and private *racially discriminatory* interference with property rights." *Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 616, 107 S.Ct. 2019, 2021, 95 L.Ed.2d 594 (1987) (emphasis added); *see also Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Plaintiffs do not allege, nor have they presented any evidence suggesting, that the City discriminated against them on account of race. We therefore award summary judgment to the City on Plaintiffs' § 1982 claim. *See Lee v. Minnock,* 417 F.Supp. 436, 439 (W.D.Pa.1976) (noting that applicability of § 1982 is limited to cases of racial discrimination), *aff'd. without op.,* 556 F.2d 567 (3d Cir.1977). It is equally well-settled that punitive damages are not recoverable against a municipality in a § 1983 suit. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Coleman v. Kaye,* 87 F.3d 1491, 1506 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 754, 136 L.Ed.2d 691 (1997).

■ The City argues that the remainder of Plaintiffs' § 1983 claim must also be dismissed under well-settled principles of constitutional law. The City contends that Plaintiffs have not asserted a valid § 1983 claim because they do not allege that any custom or policy on the City's part caused the alleged constitutional violations in this case. The City points to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its

progeny in this regard. *See City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Plaintiffs rejoin that these cases do not require them to allege any such custom or policy. Rather, Plaintiffs argue that *Monell* and its progeny establish that a municipality is a "person" that can be held liable under § 1983, and that they therefore may bring a "direct" action against the City itself. According to Plaintiffs, these cases "clearly dictate[ ] that a municipality is liable under 42 U.S.C. § 1983 *if the municipality itself is the actor* which causes the deprivation of an individual's [c]onstitutional right. This has been and continues to be the Plaintiff's theory in the case at bar." (Pls.' Mem. in Resp. to City's Mot. at 4) (emphasis added).

We find this theory unconvincing. Our Court of Appeals recently described the nature of municipal liability under § 1983 in *Beck v. City of Pittsburgh,* 89 F.3d 966 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1086, 137 L.Ed.2d 219 (1997). The court explained that "[w]hen a suit against a municipality is based on § 1983, *the municipality can only be liable* when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Id.* at 971 (citing *Monell* ) (emphasis added). The court quoted the following passage from *Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir.1990), in describing the "two-path track to municipal liability" created by "the Court's holding and reasoning in *Monell* ..., depending on whether the allegation is based on municipal policy or custom":

> A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official

proclamation, policy or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

*Beck,* 89 F.3d at 971 (quoting *Andrews,* 895 F.2d at 1480 (omitting citations)). Custom "may also be established by evidence of knowledge and acquiescence." *Id.*

■ *Beck* makes clear that our Court of Appeals does not adhere to Plaintiffs' novel reading of *Monell.* The court refers unmistakably to a "two-path track to municipal liability" and states that "the municipality can only be liable" under § 1983 for constitutional violations that result from a policy or custom. *Id.* No reference is made to a third path—a so-called "direct theory of liability"—in which the "municipality itself is the actor" and is liable for "its own actions" independent of any policy or custom. Indeed, Plaintiffs direct us to no case in any jurisdiction which interprets *Monell* in the manner they propose. Finally, even if the law were not so well-settled in this regard, we would not adopt Plaintiffs' reasoning because we fail to see how the City may ever be "itself the actor." By its very nature, a municipality is a legal entity that "acts" only through its agents. The two-path track created by *Monell* is the framework for analyzing when the acts of one or more of these agents render the municipality itself liable.

Thus, we find Plaintiffs' theory of recovery under § 1983 invalid in light of well-settled principles of constitutional law. As there are no factual issues to be tried, we grant summary judgment on the remainder of Plaintiffs' § 1983 claim in the City's favor. Plaintiffs' Motion is, of course, denied with respect to their constitutional claims.

*IV. State Law Claims*

■ After dismissing Plaintiffs' two federal claims, we have no independent basis of jurisdiction over what remains of this action.[4]

---

4. In the City's initial Motion for Summary Judgment, it requested that we remand the pendent state law claims to state court. In the City's subsequent response to Plaintiffs' Motion, it amended this request and moved this Court to award summary judgment in its favor on Plaintiffs' state law claims as well. We therefore treat the City's Motion as moving for summary judgment on Plaintiffs' Complaint in its entirety.

Under such circumstances, a district court may, in its discretion, decline to exercise supplementary jurisdiction over the state claims pursuant to § 1367(c)(3). *Mark v. Borough of Hatboro,* 856 F.Supp. 966 (E.D.Pa.1994), *aff'd,* 51 F.3d 1137 (3d Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). Our Court of Appeals has instructed that "where the claim over which the district court has original jurisdiction is dismissed before trial," the court must remand or dismiss the pendent state law claims "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative reason for doing so." *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995) (citing *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir.1993), and *Lovell Mfg. v. Export–Import Bank of the United States,* 843 F.2d 725 (3d Cir.1988)).

 Because this case is scheduled for trial next month, remanding it would no doubt delay the final disposition of the matter. The issues that remain for determination, however, are not routine factual questions or simple principles of Pennsylvania law. Rather, questions remain concerning (1) whether the City is immune from liability for conversion under these circumstances pursuant to the Political Subdivision Tort Claims Act, 42 Pa.Cons.Stat.Ann. §§ 8541 *et seq.,* and (2) how the word "property" in Judge Papalini's Order must be construed under Pennsylvania's property law and rules governing the construction of state court orders. Considerations of comity strongly militate in favor of allowing a state court to resolve these questions. *See Hollus v. Amtrak Northeast Corridor,* 937 F.Supp. 1110, 1121 (D.N.J.1996) (noting comity considerations). We find that such considerations outweigh the delay that may result from remanding this case, particularly since it was filed less than one year ago. We therefore decline to exercise jurisdiction over the remaining state law claims.

An appropriate Order follows.

### ORDER

AND NOW, this 7th day of March, 1997, upon consideration of the Motion for Summary Judgment of Defendant City of Philadelphia, and Plaintiffs' response thereto, and Plaintiffs' Motion for Summary Judgment, and Defendant City of Philadelphia's response thereto, it is hereby ORDERED that:

(1) Plaintiffs' Motion for Summary Judgment is DENIED as to Counts III and IV of the Complaint;

(2) Defendant City of Philadelphia's Motion for Summary Judgment is GRANTED on Counts III and IV of Plaintiffs' Complaint and Counts III and IV are DISMISSED with PREJUDICE against the City of Philadelphia;

(3) both motions are DISMISSED for lack of supplemental jurisdiction as to Counts I and II of the Complaint;

(4) this case is REMANDED to the Court of Common Pleas of Philadelphia County.

IT IS FURTHER ORDERED that unknown Defendants John Doe and Jane Doe are hereby DISMISSED from this action without prejudice.