**THE PHILLIES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV. A. 99–4054.

United States District Court, E.D. Pennsylvania.

May 24, 2001.

Charles B. Blakinger, Hoyle, Morris & Kerr, Philadelphia, PA, for Plaintiff.

Christopher R. Zaetta, U.S. Dept. of Justice, Tax Div., Washington, DC, for Defendant.

## Memorandum and Order

YOHN, District Judge.

Plaintiff, the Phillies, seeks a full or partial refund from the United States (the "Government") for employment taxes paid by the Phillies on settlement payments distributed to some Phillies players in 1994.

In the 1980s, the Major League Baseball Players' Association (the "MLBPA") filed grievances against the then twenty six Major League Baseball Clubs (the "Clubs"), alleging that the Clubs had violated the collective bargaining agreement (the "CBA") between the MLBPA and the Clubs by colluding to inhibit free agency. The Phillies were one of the twenty six clubs. The MLBPA and the Clubs eventually settled the grievances. The Clubs agreed to pay the MLBPA $280 million. The MLBPA, in turn, distributed a portion of the settlement to the baseball players harmed by the Clubs' breach.

The parties have both filed motions for summary judgement. First, the Phillies contend that the interest portion of the payments to Phillies players is not taxable under either the Federal Insurance Contribution Act ("FICA") or the Federal Unemployment Tax Act ("FUTA"). The Government concedes this point. Second, the Phillies contend that the non-interest portion of the payments constitutes damages for breach of contract, not compensation for lost wages, and therefore the payments are not taxable under either FICA or FUTA. The Government argues that the non-interest payments are wages and are therefore taxable. A review of the jointly submitted record establishes that the non-interest payments are wages. Third, the Phillies argue in the alternative that if the non-interest payments are wages, they should be taxed as wages paid in 1986 and 1987—the years for which the payments compensate the Phillies players. The Government argues that the payments should be taxed as wages paid in 1994—the year in which the actual payments were distributed. Recent Supreme Court precedent clearly establishes that back wages should be taxed in the year of payment, not in the year in which the wages should have been paid. Summary judgment will be granted in favor of the Phillies on the first issue and in favor of the Government on the second and third issues.

## I. Standard of Review

The court may grant summary judgement "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court should not resolve disputed factual issues, but rather, should determine whether there are factual issues which require a trial. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where, as here, the parties have filed cross-motions for summary judgment, "Rule 56(c) does not mean that the case will necessarily be resolved at the summary judgment stage.... Each party must still establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Atlantic Used Auto Parts v. City of Philadelphia,* 957 F.Supp. 622, 626 (E.D.Pa.1997). If no factual issues exist and the only issues before the court are legal, then summary judgment is appropriate. *Sempier v. Johnson & Higgins,* 45 F.3d 724, 727 (3d Cir.), *cert denied.* 515 U.S. 1159, 115 S.Ct. 2611, 132 L.Ed.2d 854 (1995). In the matter at hand, because no genuine issue of material fact exists, summary judgment is appropriate.

## II. Facts

The parties are in agreement on the facts relevant to resolution of this matter. The MLBPA filed three grievances alleging that the Clubs—the Phillies and the twenty five other Major League Baseball Clubs—colluded in violation of Article XVIII(H) of the MLBPA's CBA.[1] Doc. 15, Exs. 3–7 (Arbitration Panel Decisions 76, 79, 82, 81, 83).[2] Article XVIII sets the conditions for baseball's free agency system. Ex. 1 (collective bargaining agreement). The first grievance was filed in 1986 and alleged collusion in the 1985–1986 baseball season. Ex. 3. The second and third were filed in 1987 and 1988 and alleged collusion in the 1986–87 and 1987–88 seasons respectively. Exs. 4–5. In

ruling on liability, the three separate panels reviewing the grievances each held that the Clubs had colluded in violation of Article XVIII(H). Ex. 3 at 15; Ex. 4 at 24, 47, 80; Ex. 5 at 31–32.

Specifically, the panels found that the Clubs had interfered with the contractual rights of the players (1) by acting in concert to preclude or hinder players who were free agents from leaving their previous Clubs after the 1985 and 1986 baseball seasons, and (2) by acting in concert to depress overall salary levels and the levels of other contract benefits and special covenants after the 1987 baseball season by sharing information as to what offers were being made to free agent players. Ex. 3 at 15; Ex. 4 at 24, 47, 80; Ex. 5 at 31–32.

Following the liability findings, other arbitration panels convened to settle disputes over damages. Ex. 7. The panels found that from 1986 to 1988 free agents suffered an aggregate salary shortfall of $113,028,086.71: $10,528,086.71 in 1986, $38,000,000 in 1987, and $64,500,000 in 1988. Ex. 6 at 30; Ex. 7 at 42. The panels did not rule on the MLBPA's other claims for damages—namely claims for loss of mobility, loss of no-trade provisions, loss of contract guarantees, and other types of consequential damages. Ex. 12 at 21–22.

On December 21, 1990, the MLBPA and Clubs settled the grievances. Ex. 8 (Settlement Agreement) at 38–39. The Clubs agreed to pay the MLBPA $280 million: $243,202,104 to settle the three grievance claims and $36,797,896 in pre-settlement interest. *Id.* at 1–2. Each of the Clubs is

---

1. The CBA's design of the free agency system prohibits concerted action among players as well as concerted action among the clubs. Doc. 15, Ex. 1 (Basic Agreement) at 51–51. Also, the CBA commands that disputes between the parties be submitted to a panel for binding arbitration. *Id.* at 22–30.

2. Unless otherwise noted, all citations in this section refer to individual documents from within Document # 15, the parties' joint evidentiary supplement.

jointly and severally liable for the payment of the $280 million, and each of the twenty six clubs contributed 1/26th of the total settlement. White Aff. (Doc. 12) at ¶ 3.[3] The settlement agreement did not establish precisely how the settlement was to be distributed to players. Ex. 8 at ¶¶ 9–10, 13, 18, 19. Rather the MLBPA was given the authority, subject to oversight by the arbitration panel, to distribute the settlement proceeds. *Id.* The MLBPA began the distribution process by drafting a framework for distribution, which the arbitrators approved on September 11, 1991. Ex. 10.

In 1994, the MLBPA distributed $193,808.87 ($142,500 as damages and $51,308.87 in interest) to three former Phillies players employed (or deemed employed) by the Phillies in 1986. *Id.* at ¶ 8. Also in 1994, the MLBPA distributed $2,246,062.49 ($1,753,870 as damages and $492,192.49 in interest) to nine former Phillies players employed (or deemed employed) by the Phillies in 1987.[4] *Id.* The Phillies reported $63,941.42 as the employer's share of FICA taxes on the distribution and timely paid the IRS that amount. Clothier Aff. at ¶¶ 2–3 (attachment to Doc. 12). The Phillies also reported and timely paid $504 in FUTA taxes. *Id.*

Under the settlement, the Clubs were required to seek an IRS private letter ruling on the payroll tax treatment of the settlement distributions to the players. Ex. 8 at Art. I, ¶ 11(a). The Clubs did not admit that the settlement payments were wages but stated that if the settlement payments were ruled to be wages, the club employing the player in the year for which the damages award was paid should be deemed his employer for payroll tax purposes, and the club that had last employed a player should be deemed his employer if the player was not employed by any club in the year for which the damages award was paid. Ex. 12 at 38. By the time of the settlement's distribution, the IRS had not responded to the Clubs' request for a letter ruling, and the Clubs treated the settlement distributions as wages and accordingly paid employment taxes on the wages. White Aff. at ¶ 10 (attachment to Doc. 12).

In response to the Clubs' private letter request, on October 18, 1995 the IRS ruled that the interest portion of the settlement payments is not wages subject to FICA and FUTA taxes and that the non-interest portion of payments is wages and is subject to FICA and FUTA taxes. Ex. 14 at 18. The Phillies filed for a refund from the IRS on February 22, 1996. On August

---

**3.** The settlement directs that a custodian be appointed to manage the settlement fund account. Doc. 8 at ¶ 3. The settlement directs the custodian to establish separate subaccounts so as to maintain separate records for each of the 26 clubs' transactions. *Id.* at ¶ 5. Moreover,

"[a]ll funds transferred into the Account by a Club (and all income and losses with respect to such funds) shall be held for the benefit of that Club for the purpose of satisfying that Club's liability for the Settlement Payment and shall be credited to such Club's Club Subaccount. Each Club's Club Subaccount shall be subject to the liens and claims of that Club's creditors. A Club's creditors shall have no claim, however, to

any funds maintained under any other Club Subaccount."

*Id.* at ¶ 6. In the event that a club becomes insolvent or enters bankruptcy, the settlement directs the custodian to cease payment from the club's subaccount and hold funds for the benefit of the club's creditors. *Id.* at ¶ 7(a). Six calendar months after the MLBPA devises a settlement distribution plan, the MLBPA becomes custodian of the account and the Clubs lose their interest in the Account. *Id.* at ¶ 13.

**4.** The record mentions no distributions to Phillies players employed by the Phillies in 1988.

14, 1997, the IRS issued a final notice of refund disallowance on the FICA claim; the IRS has neither allowed nor denied the FUTA refund claim. Clothier Aff. ¶ 4. The Phillies subsequently filed this action and seek a refund of $9,108.25 for the interest portion of the distribution to Phillies players and $55,337.17 for the non-interest portion of the distribution. *Id.* at ¶ 6.

## III. Discussion

The Phillies contend that the interest portion of the settlement is not taxable under FICA or FUTA, and the government concedes this point.[5] Moreover, the IRS agreed by its private letter ruling that the interest component of the settlement was not "wages" and was therefore not subject to payroll taxation. *See* Ex. 14 at 18–19.[6] Ordinarily, taxpayers may rely on private letter rulings, *see* 26 C.F.R. § 601.201(*l*); and only in rare and unusual circumstances will the IRS revoke or modify a private letter ruling and retroactively apply the change to the taxpayer who originally received the letter ruling. *See* 26 C.F.R. § 601.201(*l*)(5). Here, the government points to no unusual circumstances and the record shows no evidence of an IRS revocation. Accordingly, I will order that the Phillies are entitled to a refund of $9,108.25, the taxes they paid on the interest portion of the distribution to Phillies players.[7]

There are two matters on which the parties continue to disagree: (1) whether the non-interest portion of the payments to the Phillies players constitutes "wages" and is therefore taxable under FICA and FUTA, and (2) assuming the taxability of the non-interest portion, whether the taxes should be calculated based on the year of payment or based on the year for which the payment serves as compensation. These issues are addressed below.

### A. Taxability under FICA and FUTA of Non–Interest Portion

■ The tax consequences of payments made pursuant to a settlement agreement are determined by the nature of the underlying claim. *See, e.g., United States v. Safety Car Heating & Lighting Co.,* 297 U.S. 88, 98, 56 S.Ct. 353, 80 L.Ed. 500 (1936); *Commissioner v. Murdoch,* 318 F.2d 414, 416–17 (3d Cir.1963); *Getty v. Commissioner of Internal Revenue,* 913 F.2d 1486, 1490 (9th Cir.1990) ("In characterizing the settlement payment for tax purposes, we ask, 'In lieu of what were the damages awarded?' "); *see also,* Rev. Rul. 85–98 (distinguishing taxable from nontaxable portions of settlement based on best objective evidence).

■ Both FICA and FUTA define "wages" as "all remuneration for employment" unless explicitly excluded.[8] 26

---

**5.** "The United States agrees that the interest portion of the payments made by the Phillies to Phillies Players are [sic] not 'wages' for employment tax purposes. Furthermore, the United States agrees that The Phillies are entitled to a refund of the amount of the tax paid on the interest which was paid to compensate the Phillies' Players for the Clubs' use of funds from the date of the damage caused by the Clubs' violation of the Union Contract to the date of payment." Gov. Mem. for Sum. Judg. at 2, n. 2.

**6.** The private letter ruling states in relevant part that "[t]he amount paid to recipients

representing interest in accordance with the settlement agreement are [sic] not wages subject to FICA taxes, FUTA taxes, and federal income tax withholding." Ex. 14 at 18.

**7.** Jerry Clothier, Phillies' Senior Vice–President and Chief Financial Officer, states that "the Phillies are entitled to a refund of $9,108.25 plus interest" based on the private letter ruling. Clothier Aff. (Doc. 12). The Government does not contest this calculation.

**8.** The non-interest portion of the settlement does not fall under any of the exceptions to

U.S.C. §§ 3121(a), 3306(b). "Employment" as used in this definition means "any service of whatever nature performed by an employee for the person employing him...." 26 U.S.C. §§ 3121(b), 3306(c). Moreover, the term "service" "... means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." *Social Security Board v. Nierotko*, 327 U.S. 358, 365-66, 66 S.Ct. 637, 90 L.Ed. 718 (1946).

■ The government argues that the record shows that the distributions to Phillies players were intended to compensate free agents for shortfalls in their salaries, and that therefore the distributions to the Phillies players are wages under FICA and FUTA. Gov. Mot. 3. The Phillies, on the other hand argue that the record shows that the distributions are damages for breach of the CBA and are therefore not wages under either FICA or FUTA. Phillies Mot. 1. More specifically, the Phillies argue that the payments were made by the twenty six clubs, not just the

Phillies, and hence that the payments cannot be understood to arise from an employer-employee relationship.[9] Phillies' Mot. 1-2.[10] The record supports the government's position.

■ After having held the Clubs liable, two separate arbitration panels ruled on appropriate remedies. Both measured damages primarily in terms of salary shortfalls suffered by players. *See generally* Doc. 15, Exs. 6, 7. Also, one of the panels recognized that "baseball's salary structure is interdependent and that it is driven by free agent signings." Ex. 7 at 2. Furthermore, the Clubs, in their filings before these arbitration panels, stated that the MLBPA's demand for non-salary related remedies should be dismissed because such relief would be "far more extensive than is necessary to make the former free agents whole. Such damages would give the players much more money than what they would have received in a free market situation...." Doc 15, Ex. 17 at 7. Moreover, to determine the likely outcomes of

the definition of wages under FICA or FUTA, and the Phillies do not argue otherwise.

9. The government argues that the Phillies may not present this argument. Under 26 U.S.C. § 7422(a) (Supp.2000), one who files suit for a refund must prior to filing suit present the arguments for refund entitlement to the IRS for administrative review. Moreover, in the presentation the claimant must "set forth in detail each ground upon which a credit or refund is claimed" so as to "apprize the Commissioner of the exact basis for the" claim. 26 C.F.R. § 301.6402-2(b)(1) (1998). The government claims that the Phillies did not, in their requests for a private letter ruling, argue that they were not "employers" for the purposes of the settlement payments and that they are therefore precluded from bringing this argument in their suit. Gov. Resp. at 2. However, the Phillies did argue that the settlement payments to the Phillies players were not compensation for services and did not arise from within the context of those players' employment relationship with the

Phillies. See Doc. 1 (Phillies' Claim for FICA Refund at 5-6 in Ex. A); Doc. 1 (Phillies Claim for FUTA Refund at 5-6 in Ex. B). Although this argument was not worded identically to the argument presented here, the argument presented to the IRS and the argument presented here are substantively the same, and therefore the Phillies do not run afoul of § 7422(a).

10. The government points out that the Settlement structures payments so as to debit the Phillies subaccount for distributions to Phillies players. Gov. Resp. at 8. There is some dispute as to whether the Phillies subaccount is latter "reimbursed" from the other clubs' subaccounts for 25/26th of the distribution. *See id. San Francisco Baseball Associates v. United States*, 88 F.Supp.2d 1087, 1091 (N.D.Ca.2000). This dispute is not material, since even assuming the Phillies position, the payment mechanism, when understood in light of the underlying claim, does not show that the distributions are not wages.

the grievances, the Clubs' lawyers prepared a risk analysis which focused on the roughly $113 million in back-wages already assessed by the arbitration panels. *See* Doc. 15, Ex. 15 (Exhibit 105 to Deposition Transcript of Robert A. Dupuy). The lawyers assumed that in assigning damages to years subsequent to 1988, the arbitration panels would, like the earlier panels, ignore non-salary related claims. *See id.* at 21. The focus in the risk analysis was the depression of "industry-wide compensation." *Id.* at 22. The analysis factored in a "very small chance of having a significant recovery" on other, non-salary related claims. *Id.* at 23. The lawyers predicted that the Clubs would likely have to pay approximately $300 million in back-wages without taking into account non-salary type claims such as emotional distress. Doc. 15, Ex. 15 (Exhibition 105). Finally, even the MLBPA's association came to believe that its non-salary related claims would not prevail and focused the settlement on salary related claims.[11] Doc. 15, Ex. 9 at 11–12. Based on these undisputed facts, the record amply shows that the nature of the underlying claim related to salary shortfalls, and consequently, the actually mechanism through which the distributions to the Phillies players occurred is immaterial.

■ The Phillies point out that one cannot pay wages to a non-employee and that the Phillies players who received a distribution from the settlement were not the employees of the 25 clubs who paid 25/26th of the distributions. Phillies Mot. at 2. This clever argument ignores the fact that

the classification of the distributions as wages or as non-wages depends on the nature of the underlying claim, not just the structure of the payment scheme. Because the underlying claim clearly shows that the distributions are basically back wages, the structure of the payment scheme is immaterial.

The Phillies also point out that the settlement was with the MLBPA, not the individual players, and furthermore, the MLBPA, not the Clubs, undertook the distribution of the settlement proceeds to the players. Phillies Mot. at 8–9. However, again, the structuring of the settlement distributions does not alter the weight of the evidence discussed above; the record shows that the dominant reason for making the settlement payments was to cover the players' salary shortfalls.

Finally, the Phillies also claim that because the payments by the Clubs were made to the MLBPA, not the players, for breach of the CBA, and the MLBPA distributed the settlement proceeds to the players at its discretion, the settlement ought to be interpreted as damages, not wages. Phillies Mot. at 8–9. The Phillies further point out that the individual players did not sue under the CBA, but rather than the action was between the Clubs and the MLBPA. *Id.* at 10–11. However, these facts, when interpreted in light of the elements of the record reviewed just above, are immaterial. The record plainly shows that the distributions to players were primarily intended to make them whole by paying them the difference between the salary they received as free

---

**11.** "Arbitrators Nicolau and Roberts substantially agreed with the Clubs that players could not recover monetary damages for non-salary injuries. The [MLBPA] objected to this draft decision, and the arbitrators agreed to further consider the matter. No final decision ever issued. At the time of the settlement, the [MLBPA's] best judgment was that there was only a very minimal chance of prevailing on these issues.... Given the foregoing, a claim for non-salary injury is not potentially valid unless the player makes some threshold showing that the injury he suffered occurred as a direct result of the Clubs' collusion." Doc 15. Ex. 9 (Proposed Framework for the Evaluation of Individual Claims) at 12.

agents and the salary they would have received as free agents were the Clubs not colluding. The nature of the underlying claim was clearly this salary shortfall, and as such, the distributions were wages for FICA and FUTA purposes.

**B. Year in Which to Compute Employment Tax Payment**

Assuming that the non-interest portion of the payments to the Phillies players is wages, the Phillies further argue that the payments should be taxed as if they were paid in 1986 and 1987—in theory the years in which the wages would have been paid had the Clubs not colluded. The government urges the IRS's long-standing position of taxing wages in the year of payment. In a recent decision, the Supreme Court, deferring to the IRS's long standing approach, held that "back wages are subject to FICA and FUTA taxes by reference to the year the wages are in fact paid." *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 121 S.Ct. 1433, 1444, 149 L.Ed.2d 401 (2001).

Prior to this decision, the parties agreed that the ruling would be dispositive in this case. Moreover, since this ruling, neither party has advised this court that it no longer believes this to be true. It is, therefore, unnecessary to review the parties' arguments in light of this holding. Because the non-interest portion of the payments is taxed in the year of payment, the Phillies are not entitled to a refund.

**IV. Conclusion**

In sum, the parties agree that the Phillies are entitled to a FICA and FUTA refund for taxes paid on the interest portion of the distributions to Phillies players. However, the non-interest portion of the distributions clearly falls under FICA and FUTA's definition of "wages", and accord-ingly is taxable under both statutes. Finally, recent Supreme Court precedent establishes that wage payments are taxed in the year of payment, not in the year for which the wages were due. Accordingly the Phillies are not due a refund for wage taxes on the non-interest portion of the distributions.

**Order**

And now, this day 24th of May, 2001, upon consideration of the parties' cross-motions for summary judgment (Docs.9, 10, 12), the parties' answers (Docs.14, 16), and the parties' joint evidentiary supplement (Doc. 15), it is hereby ORDERED that

1. Judgment is entered in favor of the Phillies and against the United States of America in the amounts of $9,108.25, representing FICA and FUTA taxes paid on the interest portion of the settlement distributions;

2. The balance of the plaintiff's motion for summary judgment is denied;

3. The Defendant's motion for summary judgment on the non-interest portion of the settlement distribution is granted and judgment is entered in favor the the United States of American and against the Phillies on the non-interest portion of the settlement distribution.